Albert J. STIFTEL, Andrew D. Christie, George R. Wright, Robert C. O'Hara, Vincent A. Bifferato, Clarence W. Taylor, Joseph T. Walsh, Claud L. Tease, William G. Bush, III, Bernard Balick and Joseph J. Longobardi, Plaintiffs,

v.

Thomas R. CARPER, Weston E. Nellius, W. Spencer Thompson, Ernst Danneman, Russell Dineen, Ralph V. Deakyne, Don Dryden, Ronald Lankford and Frederick D. Thomas, Defendants.

Court of Chancery of Delaware, New Castle County.

Submitted May 18, 1977.
Decided July 22, 1977.

---

Victor F. Battaglia and Samuel R. Russell of Biggs & Battaglia, Wilmington, for plaintiffs.

Regina M. Small, Deputy Atty. Gen., Dept. of Justice, Wilmington, for defendants.

ON CROSS MOTIONS FOR SUMMARY JUDGMENT. JUDGMENT FOR PLAINTIFFS. MOTION OF DEFENDANTS DENIED.

BROWN, Vice Chancellor.

This is an action brought by the eleven judges who constitute the Superior Court of the State of Delaware, a court which exists by virtue of Article IV, § 1 of the *Delaware Constitution of 1897*. The defendants are sued in their respective capacities as State Treasurer, Secretary of Finance and members of the State Board of Pension Trustees. The suit challenges the application of a 1976 amendment to the judicial pension statutes which purports to increase the amount to be deducted from plaintiffs' sala-ries for the purpose of contribution to the State Judiciary Retirement Fund. Plaintiffs seek a permanent injunction against the defendant State officials enjoining them from making such increased deductions hereafter. They further seek restoration of all funds which have been deducted from their compensation to date on the strength of the challenged amendment. There being no material dispute of fact, the matter is before the Court on cross-motions for summary judgment.

■ Because the matter in issue here involves the amount of contributions to the State Judiciary Retirement Fund, it is one in which the members of this Court, as well as all other members of the judiciary of this State, have of necessity a financial interest. While a financial interest in the outcome of litigation dictates the disqualification of a judge who would otherwise have the power to make the determination, an exception to such disqualification is recognized where the basis therefor would disqualify all other judges as well and thus leave the parties without an opportunity for their day in court. As stated by the United States Supreme Court in *Evans v. Gore*, 253 U.S. 245, 247–248, 40 S.Ct. 550, 551, 64 L.Ed. 887 (1920), concerning the applicability of the income tax laws:

"Because of the individual relation of the members of this court to the question . . . we cannot but regret that its solution falls to us; and this although each member has been paying the tax in respect of his salary voluntarily and in regular course. But jurisdiction of the present case cannot be declined or renounced. The plaintiff was entitled by law to invoke our decision on the question as respects his own compensation, in which no other judge can have any direct personal interest; and there was no other appellate tribunal to which, under the law, he could go."

See also *Bardens v. Board of Trustees of Judges Retire. Sys.*, Ill.Supr., 22 Ill.2d 56, 174 N.E.2d 168 (1961); and compare *Du Pont v. Green*, Del.Supr., 8 W.W.Harr. 566,

195 A. 273 (1937) where the Delaware Supreme Court passed upon the constitutionality of income tax statutes as applied to the salary of a public officer.

So here, this Court is the only one in this State with the jurisdiction to grant injunctive relief. Moreover, counsel for the parties are in agreement to have this Court make the initial determination. For these reasons I conclude it to be both proper and necessary to render a decision on this matter despite the existence of an inescapable interest in the outcome. With this explanation I turn to the issues presented.

The present law creating a separate pension plan and fund for members of the State Judiciary was initially enacted in Delaware in 1955. 50 *Del.L.* Ch. 119. Participation in this plan is voluntary rather than compulsory. This is illustrated by the following language of 29 *Del.C.* § 5605(a):

"*Each new member* of the state judiciary, whether by appointment and confirmation or as a result of any provision of this chapter, *may accept the provisions of this chapter by written declaration to that effect within 30 days following his becoming a member of the state judiciary.* The declaration of acceptance shall be filed in the office of the Secretary of State. *Upon the filing of such written declaration by a member of the state judiciary, the benefits of this chapter shall be available to him.*" (Emphasis added.)

This requirement for written acceptance must be read in light of the contribution provisions contained in 29 *Del.C.* § 5601(a). Prior to the amendment here in issue, § 5601(a) read as follows:

"(a) The State Judiciary Retirement Fund shall be established and maintained by the Board of Pension Trustees. The Secretary of Finance shall act as the Board of Pension Trustees' agent in the care of the assets of the Fund. *Each member of the state judiciary who elects to accept the provisions of this chapter shall contribute to the Fund each year for the first 25 years of service, but not thereafter, the lesser of $500 or 5% of*

*total compensation.* Such contributions shall be prorated on a monthly basis." (Emphasis added.)

On July 27, 1976, § 5601(a) was amended by 60 *Del.L.* Ch. 649 (effective retroactively to June 30, 1976). This amendment did away with the last above-quoted language and substituted in lieu thereof the following:

"(a) The State Judiciary Retirement Fund shall be established and maintained by the Board of Pension Trustees. The State Treasurer shall act as the Board of Trustees' Agent in care of the assets of the Fund. *Each Member of the State Judiciary who elects to accept the provisions of this chapter shall contribute to the Fund each year an amount equal to five percent (5%) of his total compensation which exceeds $6,000.00.* Such contribution shall be prorated on a monthly basis, and shall commence with the first pay period ending after June 30, 1976." (Emphasis added.)

All of the plaintiffs, within 30 days of the appointments under which they presently serve, filed a written declaration to accept the provisions of 29 *Del.C.* Ch. 56 as they existed prior to the foregoing amendment. None of the plaintiffs have elected to accept the provisions of 29 *Del.C.* Ch. 56 as amended by 60 *Del.L.* Ch. 649. However, since the effective date of the amendment, deductions have been made from the salaries payable to the plaintiffs for their contributions to the State Judiciary Retirement Fund in accordance with the terms of the amendment.

By statute, the annual salary of the plaintiff Stiftel, as President Judge of the Superior Court is $39,500. The salary of the other plaintiffs, as Associate Judges, is $39,000 annually. The contribution now being taken from Judge Stiftel under the amendment formula is at the rate of $1,675 annually. The contribution now being taken from each of the other plaintiffs is at the rate of $1,650 annually. Thus, the amendment in issue has been interpreted by the defendants as increasing the annual pension contributions of the plaintiffs by the sum of

$1,175 in the case of Judge Stiftel and by the sum of $1,150 as to each of the other Superior Court judges. It should also be noticed that the amendment, by eliminating the provisions restricting contribution to the first 25 years of service, has increased the potential period of contribution to include each year served by a judge electing to participate.

Plaintiffs attack the application of the amendment on two grounds. First, they assert that a law which purports to cut into their compensation violates Article XV, § 4 of the *Delaware Constitution of 1897* which provides

"No law shall extend the term of any public officer *or diminish his salary or emoluments after his election or appointment.*" (Emphasis added.)

They contend that the pension benefits extended by 29 *Del.C.* Ch. 56 constitute an emolument attached to their offices as members of the State judiciary and that as such, their existing rights previously acquired thereunder cannot be diminished by an act of the General Assembly during their respective terms of office. Secondly, plaintiffs assert that by virtue of their written acceptance of the pension statutes as they existed at the time of their respective appointments, they acquired contract rights, the obligation of which on the part of the State cannot be impaired by subsequent legislative act. In this they rely on that portion of Article I, § 10 of the United States Constitution which provides that

"No State shall . . . pass any . . Law impairing the obligation of Contracts . . . ."

Defendants' position in response is that neither the salaries of the plaintiffs nor their emoluments of office have been diminished by the amendment to 29 *Del.C.* § 5601.[1] They point out that the salaries of the plaintiffs still remain at $39,500 and $39,000 respectively and that the pension benefits to which they will be entitled upon eligible retirement are still the same. They view the amendment as merely requiring

the plaintiffs to make a more realistic contribution to the Fund which is to provide their prospective pensions. Moreover, defendants point to 29 *Del.C.* § 5608, which allows them to recover in full all moneys paid into the pension fund in the event that they should cease judicial service before becoming eligible to receive pension benefits. Thus it is argued that overall plaintiffs have suffered no diminution of compensation whatsoever.

On the second point, defendants argue that since public officers do not hold their office by contract plaintiffs can have no interest arising by virtue of their office which is protected by the Contract Clause of the Federal Constitution. As authority for the basic premise of this defense they cite, among others, *Butler v. Pennsylvania*, 10 How. 402, 51 U.S. 402, 13 L.Ed. 472 (1850); *Crenshaw v. United States*, 134 U.S. 99, 10 S.Ct. 431, 33 L.Ed. 825 (1890); *Kingston v. McLaughlin*, 359 F.Supp. 25 (D.Mass. 1972); *Berenguer v. Dunlavey*, 352 F.Supp. 444 (D.Del.1972) (Stapelton, J. concurring). Alternatively, defendants contend that even if the pension rights of the plaintiffs fall within the realm of contract rights, they have no present standing to oppose a change in contribution requirements since none of them has served sufficient time or reached the required age to be entitled to pension benefits. In other words, defendants assert that plaintiffs presently have no vested interests in the provisions of the judicial pension statutes which would support their objections to a change in the pension plan.

To a certain extent it appears that these two points of contention are intertwined. Regardless of the viewpoint, however, I am convinced from the arguments presented that the amendment to § 5601 is invalid insofar as it purports to effect the plaintiffs and that as a consequence they are entitled to the relief they seek.

■ To begin with and from the standpoint of simple logic, if it was the intention

---

1. Based on *Todd v. United States*, 158 U.S. 278, 15 S.Ct. 889, 39 L.Ed. 982 (1895) defendants concede for the purpose of this decision that the plaintiff judges are public officers.

of the General Assembly to impose increased contributions on members of the judiciary already voluntarily participating in the statutory pension plan, it seems that it failed to complete the attempt. The amendment was only to § 5601(a). That subsection establishes the amount of contribution required of each member of the judiciary "who elects" to accept the provisions of the statute. However, it is § 5605 (first-quoted herein) which establishes who may make such an election, and this privilege is limited to "[e]ach new member . . . within 30 days following his becoming a member of the state judiciary." By changing only the contribution terms of § 5601 without making any change in § 5605(a) the obvious effect is to impose the new contribution formula on each "new member" of the State judiciary appointed after June 30, 1976. Stated another way, the amended provisions of § 5601(a), by its terms, only apply to one who elects to be bound by the provisions of 29 *Del.C.* Ch. 56, and, under § 5605(a), the only person who can so elect is a new member of the State judiciary. Plaintiffs are not new members of the judiciary and therefore they are powerless to elect to accept the amended provisions of § 5601(a) even if they wanted to do so. Consequently, from the posture in which 29 *Del.C.* Ch. 56 is now left, it seems clear that the challenged amendment, in the form in which it was adopted, could only have had prospective application to new members appointed to the judiciary thereafter.[2]

■ This analysis leads to a second obvious point, namely, that pension rights created by a written acceptance under § 5605(a) are contractual. It seems difficult to reach any other conclusion. Participation in the State Judiciary Retirement Fund is not compulsory, and the statutes prescribe no mandatory deduction from a judge's salary for purposes of the separate judicial pension plan. A new member of the judiciary participates only if he chooses to do so in writing within the designated time. Once participation is accepted, however, the statutes contain no provisions which would permit a judge to withdraw from the plan while in office. Rather, by his written declaration of acceptance a judge automatically authorizes the monthly deductions to be made thereafter. 29 *Del.C.* § 5605(b). As noted earlier, the sole provision for refund of amounts paid in is contained in § 5608, and this occurs only when a participating judge " . . . ceases to serve as such without becoming eligible for benefits . . . ." In this event all contributions are refundable to him, without interest.

In addition, by written acceptance, the judge forfeits his right to receive any other State pension, 29 *Del.C.* § 5609, and agrees that the act of filing a certificate of his permanent physical or mental incapacity, in the statutory form prescribed by § 5602(c), shall constitute his immediate resignation from office without further act on his part.

When these factors are considered along with the fact that by accepting the provisions of the statute the participating judge also agrees to pay the annual monetary contribution fixed by the State (and under statutes which make no provision for adjusting the amount of contribution thereafter) in return for the promise of the pension benefits made available to him should he thereafter meet the age and term of service requirements, then it seems that there is ample consideration on both sides to support a contractual undertaking.

■ The defendants' argument that a public officer does not hold office by contract, while perhaps true, cannot be applicable here for the simple reason that the pension rights involved do not automatically accompany the office. Rather, they come about only if the office holder agrees

2. Compare the approach taken by a previous General Assembly on the only other occasion where the contribution provisions of 29 *Del.C.* § 5601(a) were amended. There it was provided that any judge then participating who did not wish to accept the amendments could so indicate providing he did so in writing within 90 days. A failure to so indicate within that time was taken as an acceptance of the new provisions. See 56 *Del.L.* Ch. 198 § 5. This would also seem to imply a tacit recognition of existing contract rights by that Legislative body.

to accept and abide by the terms of the special pension plan offered to him by statute. Nor is there any merit to their argument that because none of the plaintiffs are eligible at this point to receive benefits they have no vested interest in the judicial pension plan. Becoming eligible through age and service is not the only basis for the vesting of pension interests. This was recognized in *In Re State Employee's Pension Plan*, Del.Supr., 364 A.2d 1228 (1976) wherein our Supreme Court stated

" . . . we hold that *vested contractual rights* exist under the State Pension Law and in the State Pension Fund, at least as to those employees who have *statutory vested rights* in service pensions *or* who have otherwise *fulfilled eligibility requirements* for pension." (Emphasis added.)

In a similar situation involving a voluntary judicial pension plan, it was held as follows in *Campbell v. Michigan Judges' Retirement Board*, Mich.Supr., 378 Mich. 169, 143 N.W.2d 755 (1966):

"Here the judge voluntarily agrees to enter the system and pay the contributions, he does pay, and the State agrees to pay certain retirement benefits. There is, then, legal consideration, mutuality of agreement and mutuality of obligation. A contract is made."

The Michigan Court went on to state as follows at 143 N.W.2d 757:

"[The Michigan Constitution] and Article I, § 10 of the United States Constitution, prohibit the impairment by State law of the obligation of a contract. Vested rights acquired under contract may not be destroyed by subsequent State legislation or even by an amendment of the State Constitution.

\* \* \* \* \* \*

"We hold that a valid contract was entered into between judges and the State, that the State's agreement thereunder to pay the judges certain benefits created vested rights for the judges upon their retirement, that these are enforceable and cannot be impaired or diminished by the State. This should be deemed to include not only the benefits provided by statute *at the time of entry into the contract* and of retirement, but also, those later added by statutory amendment. The legislature may add to but not diminish benefits without running afoul of constitutional prohibition against impairment of the obligation of a contract." (Emphasis added.)

To the same effect with regard to a voluntary contribution pension system, namely, that the benefits thereunder may not be unilaterally modified or reduced by government once acceptance is made, see *State v. City of Jacksonville Beach*, Fla.App., 142 So.2d 349 (1962); *Bardens v. Board of Trustees of Judges Retire. Sys., supra, Clarke v. Ireland*, Mont.Supr., 122 Mont. 191, 199 P.2d 965 (1948); *Ball v. Board of Trustees*, N.J. Supr., 71 N.J.L. 64, 58 A. 111 (1904); 60 *Am.Jur.2d*, Pensions And Retirement Funds § 50.

■ Thus, to the extent that the legislative enactment was perhaps intended to amend 29 *Del.C.* § 5601(a) so as to increase the pension contributions of the plaintiffs, it would constitute an impermissible attempt to reduce the vested contract rights of plaintiffs in violation of the Contract Clause of the United States Constitution. By their written acceptance of the separate pension plan as then offered, plaintiffs elected, for the statutory considerations, to accept the benefits made available. Included was the right to ultimately receive pension payments upon qualified retirement at a cost of the lesser of $500 or 5 per cent of their salaries for each year of service up to a maximum of 25 years. The amendment, if applicable, would not increase the eventual pension payments and rights which they agreed to accept upon eligibility. They remain the same. The benefit of being able to enjoy these potential rights and payments for the contribution agreed upon, however, and the corresponding contractual obligation of the State to provide them, is obviously impaired if plaintiffs could now be compelled to pay involuntarily from their salaries, and for the same thing, more than three times an amount which, but for

their voluntary acceptance of the previous statutory terms, they could not have been compelled to pay to begin with.

In view of the foregoing it becomes unnecessary to deal with plaintiffs' argument that the amendment to § 5601(a) diminishes their emoluments of office in violation of Article XV, § 4 of the Delaware Constitution. In this regard, however, one further observation seems appropriate.

As noted previously, once the provisions of the judicial pension statutes are voluntarily accepted by a new member of the State judiciary, participation thereafter becomes compulsory in effect. There are no statutory provisions for withdrawal while the judge continues in office. He is entitled to withdraw, and thus receive a refund of his contributions, only if he leaves the bench prior to serving the period of time required to make him eligible for eventual pension payments. And if he does so, his contributions are refunded without interest. On the other hand, as long as he remains in office he must contribute to the pension fund, and his written acceptance authorizes his contributions to be deducted from his pay by the State before he receives it.

From this it becomes obvious that if the General Assembly has the power to increase the pension contributions of a participating judge, and thereby to reduce his net pay even though his total salary is left untouched, it has him locked in the captive position of either succumbing to a diminution of his presently receivable income or resigning from office as the alternative.

The defendants suggest that the annual contributions made by plaintiffs under the statutes existing at the time of acceptance by them are inadequate and unrealistic under present economic conditions. They suggest that if the State Judiciary Retirement Fund is to be self-sustaining, increased contributions are necessary and that consequently, even if the legislative action technically impairs the obligations of the existing pension contracts, "minor impairment or infringement of contractual rights" by the State has been held to be permissible where necessary to protect the vital inter-

ests of the people. *Globe Liquor Co. v. Four Roses Distillers Co.*, Del.Supr., 281 A.2d 19 (1971). This public interest justification, as applied to this case, apparently derives from that portion of 29 *Del.C.* § 5601(b) which provides that if at any time there shall be insufficient money in the State Judiciary Retirement Fund, funds shall be transferred from the General Fund of the State to make up the deficiency. Defendants further draw upon the language of *In Re State Employees' Pension Plan, supra*, that a State employee with vested contractual pension rights "is entitled to protection against *unreasonable* modification of the Plan." 364 A.2d 1235.

Continuing this reasoning, defendants offer calculations to show that a participating judge who contributes under former § 5601(a) for the maximum term of twenty-five years, will have contributed over this entire period an amount less than he would be entitled to receive during the first year that pension benefits would become available to him. However, even if contributions are made for twenty-five years at the rate established by the amended § 5601(a), a judge will have contributed less than what he would be entitled during his first two years of pension eligibility. Rather than show the reasonableness of the contractual modification, this example illustrates where the vital interests of the people lie in this situation.

Quite simply, if the need for funding the separate judicial pension system justifies a present legislative act to increase contributions by the judiciary, where does it stop? What is to prevent another $1,000 increase in individual contributions next year, and the next, as long as it can be numerically justified? And what would the result of this be?

Obviously, if lawful, the result would be to give the General Assembly a weapon to hold at the head of the State judiciary. It would give the legislative body an economic lever with which to exert pressure against another branch of government. It would provide the ability to accomplish indirectly by increasing pension deductions from a

fixed salary that which our Constitution forbids being done directly through a reduction in the salary of a public officer. As applied to Delaware's voluntary judicial pension plan, it would be the equivalent of transforming that which begins as a truly voluntary payment into a potential means of political oppression. This is not permitted under our system of government.

In *Barr v. Blackstone*, Del.Super., 1 Terry 450, 13 A.2d 449, 451 (1940), it was stated as follows:

"The law seems to be well settled that Constitutional provisions of the character of article 15, section 4, of the Constitution of this State, will not permit the diminution of an officer's salary or emoluments after his election or appointment. If such a course were permissible, when a change of administration took place it might happen that the Legislature would reduce the salary of the appointees of the opposing political party.

"In 46 Corpus Juris, page 1021, section 254, the following view is expressed: "Constitutional * * * provisions frequently preclude a change in the compensation of an officer either after his election or appointment, or during his term of office. Such provisions are mandatory and prevent *either direct or indirect* changes". This proposition is supported by many decided cases. [Citations omitted.]

"In 22 Ruling Case Law, page 534, the author uses this language: "A constitutional provision forbidding the change of the compensation of an official during his term of office is inexorable. It admits of no exception and it affords no opportunity for evasion by the Legislature or other body". (Emphasis added.)

In *Du Pont v. Green, supra,* the Supreme Court made the following observation with regard to precedents dealing with legislative enactments affecting judicial compensation:

"Almost every case recites, in varying language, the historical background of division of government into three co-ordinate branches, and shows that the judi-

cial department is necessarily and inherently the weakest of the three. Each case then elaborates the necessity of placing the financial independence of the judiciary beyond the control of the strongest co-ordinate branch, the legislative branch, and many cases . . . quote the language of Hamilton that 'a power over a man's subsistence amounts to a power over his will.' With all this reasoning we are in thorough accord . . ."

Further, at 195 A. 276, the Court made it clear that Article XV, § 4 of the Delaware Constitution

" . . . is intended to safeguard the term of a public official and to deny to the Legislature or other salary fixing body the right to compel compliance from a public official by reduction or abolition of salary, or to allow a salary fixing body to thus express its political or other antagonism toward a properly selected official."

While it does not necessarily appear that the General Assembly had such a motive in mind in amending 29 *Del.C.* § 5601(a), the fact remains that, other matters aside, if the defendants' position here should be accepted, it would clearly set up the potential for the indirect accomplishment of that which Article XV, § 4 proscribes.

■ Returning from this digression to the facts of the present issue, it is fundamental that an interpretation must be given to a legislative enactment which, if possible, upholds its constitutionality. *Opinion of the Justices,* Del.Supr., 295 A.2d 718 (1972); *State v. Hobson,* Del.Supr., 7 Terry 381, 83 A.2d 846 (1951). It must be presumed that in enacting a statute the General Assembly did not intend an unreasonable or unworkable result. *E. I. duPont De Nemours & Co. v. Clark,* Del.Supr., 32 Del.Ch. 527, 88 A.2d 436 (1952).

■ In this case, to apply these standards and thus uphold its validity, it is necessary to conclude that the June 30, 1976 amendment to 29 *Del.C.* § 5601(a), in the manner enacted, was intended to have only prospec-

tive application to members of the judiciary appointed thereafter, and that it was not intended to effect existing vested contractual pension rights created under the statute amended.

Accordingly, plaintiffs are entitled to an injunction curtailing further pension contribution deductions computed under the terms of the amended statute. They are also entitled to restitution of all sums wrongfully deducted and withheld under the amendment since its effective date. Order on notice.