Thomas R. CARPER, Weston E. Nellius, W. Spencer Thompson, Ernst Dannemann, Russell Dineen, Ralph Deakyne, Ronald R. Mosher, Frederick Van Sant, Frederick D. Thomas, Defendants below, Appellants,

v.

Albert J. STIFTEL, Andrew D. Christie, George R. Wright, Robert C. O'Hara, Vincent A. Bifferato, Clarence W. Taylor, Joseph T. Walsh, Claud L. Tease, William G. Bush, III, Bernard Balick, and Joseph J. Longobardi, Plaintiffs below, Appellees.

Supreme Court of Delaware.

Submitted Nov. 14, 1977.

Decided Dec. 28, 1977.

Regina M. Small, Deputy Atty. Gen., Wilmington, for defendants-appellants.

Victor F. Battaglia of Biggs & Battaglia, Wilmington, for plaintiffs-appellees.

Before TUNNELL, QUILLEN and STOREY, Justices Ad Litem.*

* Appointed by the Governor under the provisions of Art. IV, § 15 of the Constitution after the Chief Justice and the Associate Justices who are regularly in office, because of self-interest, declared disqualifications to adjudicate the cause.

QUILLEN, Justice Ad Litem, for the majority:

This is a declaratory and injunctive action brought by plaintiffs, members of the Bench of the Superior Court of the State of Delaware, against certain State officials who are sued in their official capacities.[1] Plaintiffs allege that 60 *Del.Laws* ch. 649, (hereinafter "the 1976 Amendment") which amended the State Judiciary Pension Act (29 *Del.C.* ch. 56) by requiring an increased contribution rate for their participation in the judiciary retirement system, is unconstitutional as applied to them. The amendment was enacted on July 27, 1976 when it was signed by Governor Tribbitt. By its terms, the Act was effective on June 30, 1976. The plaintiffs argue the Act is not intended to apply to them as a matter of statutory construction, is violative of Article XV, § 4 of the Constitution of the State of Delaware because it diminishes their salary or emoluments after their appointments, and also offends Article I, § 10 of the Constitution of the United States because it impairs their contract rights in their pensions. The plaintiffs seek a permanent injunction enjoining the defendants from making the increased deductions and restoration of all funds which have been deducted from their compensation to date on the strength of the challenged amendment.

Cross motions for summary judgment were filed by the parties on the pleadings and a stipulated set of facts. Vice Chancellor Brown denied defendants' motion and granted plaintiffs in an opinion dated July 22, 1977. *Stiftel v. Carper,* Del.Ch., 378 A.2d 124 (1977).[2]

The Court below held the language of the 1976 Amendment manifested an intent only to make its application prospective to new members of Judiciary appointed after its effective date and that it was not intended to affect existing vested contract rights created under the statute. In *dicta* the Court said that the amendment would, by indirection, constitute an unconstitutional diminution in compensation.

Defendants have appealed to this Court from the judgment of the Court of Chancery. Since we find that the result reached by the Vice Chancellor was clearly correct, we affirm. But we reach our conclusion on a ground which is Constitutional in nature and somewhat different than that relied upon by Court below.

The law creating a separate pension plan and fund for members of the State Judiciary was initially enacted in 1955. 50 *Del.L.* Ch. 119. It was amended twice that same year. 50 *Del.L.* Ch. 533 and Ch. 554. Subsequently, it was amended in 1961 to provide pension benefits for surviving widows (53 *Del.L.* Ch. 242) and further in 1966 to extend widow's benefits to widows of certain members of the State Judiciary who became members of the Federal Judiciary (55 *Del.L.* Ch. 428). There was a major amendment to the judicial pension law in 1967 which generally liberalized benefits including dollar amounts, provision for dependent children, and the establishment of minimum and maximum limits. 56 *Del.L.* Ch. 198.[3]

The 1976 Amendment was limited to increasing the amount of contribution which must be paid by members of the State Judiciary who elect to accept the provisions of the judicial pension law. The Amendment provided that, effective June 30, 1976, an electing member shall contribute annually "an amount equal to five percent (5%) of his total compensation which · exceeds $6,000.00." The original 1955 Act provided for a contribution of "5% of the first $7,500" of annual salary. 50 *Del.L.* Ch. 119,

---

1. The defendant Carper is the State Treasurer; the defendant Nellius is the Secretary of Finance; and the remaining defendants are members of the Board of Pension Trustees.

2. We note with approval the comments of the Vice Chancellor as to the propriety of the Court of Chancery rendering a decision in this case.

3. There have been other changes of administrative nature which have resulted in some renumbering within 29 *Del.C.* Ch. 56. See 29 *Del.C.* Ch. 56, 1970 Supp. (West 1971).

§ 1. Thus, there was originally a fixed contribution of $375 per year. The liberalizing 1967 Amendment slightly increased this amount to an annual contribution "for the first 25 years of service, but not thereafter, the lesser of $500 or 5% of total compensation. . . ." 56 *Del.L.* Ch. 198, § 1. This amounted to a fixed contribution of $500 per year. Since the plaintiff President Judge is currently paid $39,500 per year and the other Superior Court Judges are currently paid $39,000 per year, the contribution of the plaintiffs under the 1976 Amendment will be either $1,675 ($39,500–$6,000 or $33,500 × .05) or $1,650 ($39,000–$6,000 or $33,000 × 05).[4]

By stipulation, it has been established for the purposes of this action that: none of the plaintiffs is 65 years of age or older; none of the plaintiffs has been a member of the State Judiciary for 24 years or more; plaintiffs Stiftel, Christie, Bush and Wright have been members of the State Judiciary over 12 years; and the rest of the plaintiffs have been members of the State Judiciary less than 12 years. These age and service gradations have qualification significance under the judicial pension law. In particular, a Judge is eligible for a pension after 24 years of service or after achieving the age of 65 with 12 years of service or at 65 after being involuntarily retired (not reappointed or not confirmed by the Senate after reappointment) with 12 years of service. 29 *Del.C.* §§ 5602–5604. All of the plaintiffs were members of the State Judiciary at the time of enactment as well as the effective date of the 1976 Amendment.

It should also be noted, that the 1976 Amendment, unlike the original 1955 Act (50 *Del.L.*, Ch. 119, § 1, Ch. 533, § 1), the 1966 Amendment (55 *Del.L.*, Ch. 428, § 1) and the 1967 Amendment (56 *Del.L.*, Ch. 198, § 5) had no specific procedure whereby members could elect to have its terms apply to them. Understandably, none of the plaintiffs have in fact elected to be included under the 1976 Amendment.

There are three issues raised by the opinion below and the positions taken by counsel. First, did the 1976 Amendment, as a matter of statutory construction, apply to the plaintiffs? Second, if applicable to the plaintiffs, does the 1976 Amendment constitute an unconstitutional diminishment of the salary or emoluments of the plaintiffs' office in violation of Article XV, § 4 of the Constitution of the State of Delaware? Third, if applicable to the plaintiffs, does the 1976 Amendment constitute an unconstitutional impairment of the plaintiffs' contractual rights under Article I, Section 10 of the Constitution of the United States?

The Court below concluded that the 1976 Amendment, "in the manner enacted, was intended to have only prospective application to members of the judiciary appointed thereafter . . . ." *Stiftel v. Carper*, *supra*, at 378 A.2d 132–133. It reached this conclusion by a two-pronged analysis: first, by the language of the amendment itself; and, second, by determining that the contrary construction would constitute an unconstitutional impairment of plaintiffs' contract rights. Thus, the Court, while focusing on the first issue noted above, also determined the third. The Court in addition in a "digression" pointedly noted "if the defendants' position here should be accepted, it would clearly set up the potential for the indirect accomplishment of that which Article XV, § 4 proscribes." *Id.* at 378 A.2d 132.

While the Vice Chancellor spoke in terms of legislative intent in his conclusion, it is reasonably clear that he was not speaking in subjective terms. Rather, he found that "if it was the intention of the General Assembly to impose increased contributions on members of the judiciary already voluntarily participating in the statutory pension

---

4. This ignores any increase due to the cost of living adjustment which is also presently at issue in this Court. See *Stiftel v. Malarkey*, No. 216, 384 A.2d 9, 1977. The 1976 Amendment also eliminated the provision which limited contributions to twenty-five years of service. See 29 Del.C. § 5602(a) in 56 Del.L. Ch. 198. This provision evidently was then first enacted to correspond to the maximum benefit imposed by the same 1967 Amendment.

plan, it seems that it failed to complete the attempt." *Id.*, at 378 A.2d 128–129.

In particular, the Court of Chancery's statutory interpretation rested in a technical reading of the statute. The 1976 Amendment changed only 29 *Del.C.* § 5601 (a).[5] Since that section required contributions of a member of the State Judiciary "who elects" to accept the provisions of the statute and since under 29 *Del.C.* § 5605,[6] which remained unaltered by the 1976 Amendment, only a "new member . . . may accept the provisions", the Vice Chancellor was persuaded that the General Assembly only successfully manifested an intention to apply the 1976 Amendment to members of the State Judiciary taking office after its effective date.[7]

While we recognize that the technical approach of the opinion below has, given its premises, some merit in "simple logic" and is supported by the contract theory of the plaintiffs in this case, it still seems to us that to attribute such an intention to the General Assembly would be manifestly wrong. Apart from the contract theory, there is no reason why the change in § 5601(a) could not relate to any member "who elects to accept the provisions" of the pension law regardless of the time of elec-tion. Moreover, since the General Assembly specifically provided that "[s]uch contributions shall . . . commence with the first pay period ending after June 30, 1976" and not in relation to terms commencing after the effective date of the Amendment, it expressly contemplated that existing participants were intended to be included within the Amendment. Similarly, the synopsis which accompanied the original Senate Bill 701 merely said the act "requires a 5% contribution to the Fund". The absence of any limitation or qualification again would seem to expressly contemplate that the change was specifically designed for application across the board. While we would prefer to avoid the Constitutional issues, we cannot strain the construction of the statute to the point of preventing its purpose. *Mills v. State*, Del.Supr., 256 A.2d 752 (1969).

 We conclude, contrary to the opinion below, that the 1976 Amendment was intended to apply to members of the State Judiciary who elected to participate in the judicial pension plan prior to the effective date of the Amendment. Given this disposition of the statutory construction issue, we must face directly the Constitutional issues that have been raised.[8] After due

---

**5.** The 1976 Amendment was Senate Bill 701 as amended by Senate Amendment 1. It struck 29 *Del.C.* § 5601(a) in its entirety and inserted in lieu thereof the following:

"(a) The State Judiciary Retirement Fund shall be established and maintained by the Board of Pension Trustees. The State Treasurer shall act as the Board of Trustees' agent in the care of the assets of the Fund. Each member of the state judiciary who elects to accept the provisions of this chapter shall contribute to the Fund each year an amount equal to five percent (5%) of his total compensation which exceeds $6,000.00. Such contribution shall be prorated on a monthly basis, and shall commence with the first pay period ending after June 30, 1976."

**6.** This section, except for numbering and minor editing, has remained unchanged since 1955 and currently reads as follows:

"Each new member of the state judiciary, whether by appointment and confirmation or as a result of any provision of this chapter, may accept the provisions of this chapter by written declaration to that effect within 30 days following his becoming a member of the state judiciary. The declaration of acceptance shall be filed in the office of the Secretary of State. Upon the filing of such written declaration by a member of the state judiciary, the benefits of this chapter shall be available to him."

**7.** While none of the plaintiffs have taken office after the effective date, other members of the State Judiciary have done so. In particular, Chancellor Marvel has started a new term; Vice Chancellor Hartnett has been appointed to an initial term; Judge Bradley of the Court of Common Pleas has been appointed to an initial term; and Judges Horgan and Lee of the Family Court have been appointed to initial terms.

**8.** The decision herein affirming the opinion below on Constitutional grounds leaves open a question of statutory construction not before us. If the 1976 Amendment was ineffective as to sitting judges who had made their election prior to the Amendment's effective date due to Constitutional prohibitions and not due to legislative intent, is the Amendment divisible so as to be effective as to newly electing judges? In

consideration, we have determined that the pending case can best be determined on the clear and solid footing of the State Constitutional provision upon which the plaintiffs rely and that the issue under Contract Clause of the Federal Constitution need not be reached. Indeed, the State Constitutional issue is very narrow.

The precise State Constitutional language reads:

"No law shall extend the term of any public officer or diminish his salary or emoluments after his election or appointment."

It is conceded by the defendants that the plaintiff judges are public officers and that the judicial pension system established under 29 *Del.C.* Ch. 56 constitutes "salary or emoluments" as that term is used in Article XV, Section 4. This means the sole question which must be addressed as to each plaintiff is whether the 1976 Amendment "diminished his salary or emoluments after his . . . appointment." We hold that it did.

Frankly, it seems to us that the answer is self-evident. Precisely the same pension benefits cost each plaintiff over $1,000 per year more after the 1976 Amendment than they did before. It is somewhat difficult to see how it can be seriously contended that each plaintiff's "salary or emoluments" has not been diminished.

If the statement of the seeming obvious needs confirmation, we need go no farther than a Delaware precedent, *Barr v. Blackstone*, Del.Supr., 13 A.2d 449 (1940). The Court at 13 A.2d 451 said that our Constitution "will not permit the diminution of an officer's salary or emoluments after his . . . appointment." The Court then quoted with approval authorities expressing the view that Constitutional provisions precluding a change in an officer's compensation "are mandatory and prevent either direct or indirect changes." And, to emphasize the point, the Court at 13 A.2d

451–452 quoted with approval a general authority which said:

"A constitutional provision forbidding the change of the compensation of an official during his term of office is inexorable. It admits of no exception and it affords no opportunity for evasion by the Legislature or other body."

Put simply again, it seems to us that the necessary meaning of the *Barr* case is that the plaintiffs' position here must prevail. Such result is reinforced by the general law on the subject. 67 C.J.S. *Officers* § 95; 63 Am.Jur.2d, *Public Officers and Employees*, §§ 368–374. See also *Kleinfeldt v. New York City Employees' Retirement System*, N.Y.Ct. of App., 36 N.Y.2d 95, 365 N.Y.S.2d 500, 324 N.E.2d 865 (1975); *Wilson v. Marsh*, Neb.Supr., 162 Neb. 237, 75 N.W.2d 723 (1956).

On behalf of the defendants, the Attorney General notes that the *Barr* case said the purpose of the Constitutional provision was to deny the Legislature the right to compel compliance by a public official to its will by a reduction in salary and there is no evidence that was the intention here. We agree that there is nothing to suggest an improper motive on the part of the General Assembly. But, as the Vice Chancellor said, "the fact remains that . . ., if the defendants' position here should be accepted, it would clearly set up the potential for the indirect accomplishment of that which Article XV, § 4 proscribes." *Stiftel v. Carper, supra*, 378 A.2d at 132. That result cannot be permitted under our Constitution.

■ A second position taken by the Attorney General is to place reliance on *Cook v. Chilton*, Ky.Ct.App., 390 S.W.2d 656 (1965) which permitted an increase in a judicial pension contribution notwithstanding a State Constitutional provision prohibiting change in an elective officer's compensation during his term. If we had to evaluate that case as one of first impression, we

passing, both sides have assumed the Amendment is divisible and perhaps correctly so. See 67 C.J.S. *Officers* § 95d. But we note that we do not decide the divisibility question here.

Nor do we make any judgment as to the effect of our decision on the statutory construction issue on the divisibility question.

would have no hesitancy in opining that it was erroneously decided. And the Delaware law set forth in the *Barr* case requires a result contrary to that of the *Cook* case. Even if the approach of the Kentucky court, separating the statutory pension plan from the Constitutional concept of compensation, was given credence, our Constitution includes the broader term "emoluments" which is a persuasive basis for distinguishing the case. That term has been defined as "the profit arising from office or employment; that which is received as compensation for services, or which is annexed to the possession of office as salary, fees and perquisites; advantage; gain, public or private." *Barr v. Blackstone, supra*, 13 A.2d at 451. Certainly, and not contested here, "emoluments" include a judicial pension system. That emolument can be diminished by an increase in contributions as well as a decrease in benefits. In summary, we find ourselves in disagreement with the *Cook* case, the *Cook* case in direct conflict with Delaware case law, and the *Cook* case not appropriate authority under the Delaware Constitutional provision.

Consequently, the decision of the Court of Chancery is affirmed on the ground that the statute is unconstitutional as applied to these plaintiffs under Article XV, § 4 of the State Constitution. While we do not reach the issue of the Contract Clause of the Federal Constitution, we lean to the view that the judicial pension statute with its voluntary contribution feature can create contractual rights which cannot be unreasonably changed by the unilateral action of the General Assembly. *Campbell v. Michigan Judges Retirement Board*, Mich.Supr., 378 Mich. 169, 143 N.W.2d 755 (1966); *Bardens v. Board of Trustees*, Ill.Supr., 22 Ill.2d 56, 174 N.E.2d 168 (1961); *In re State Employees' Pension Plan*, Del.Supr., 364 A.2d 1228 (1976). We find, however, that the general law, as illustrated by decisions of this Court, is somewhat unclear on the question of when pension and other employee contract rights become vested. *Dorsey*

*v. State ex rel. Mulrine*, Del.Supr., 283 A.2d 834 (1971); *In re State Employees' Pension Plan, supra*; *Grant v. Nellius*, Del.Supr., 377 A.2d 354 (1977); See also Anno. 52 A.L.R.2d 437 (1957). Notwithstanding our inclination that the State should be legally bound to honor its bargain, we recognize that there is uncertainty in the law under the Contract Clause and that a decision thereunder is not essential here. Accordingly, pursuant to the settled policy of the Court not to decide a Constitutional question unless its determination is essential to the disposition of the case, we do not reach the Federal Constitutional issue. *Downs v. Jacobs*, Del.Supr., 272 A.2d 706 (1970).[9]

In conclusion, we note that this case touches directly the historic background of the division of government into three coordinate branches. There is a necessity to place the financial independence of the Judiciary beyond the control of the Legislative branch. As this court said in *Du Pont v. Green*, Del.Supr., 195 A. 273 (1937) "many cases . . . quote the language of Hamilton that 'a power over a man's subsistence amounts to a power over his will.'" It was the Constitutional obligation of the General Assembly not to diminish the salaries and emoluments of the plaintiffs after their appointment.

Affirmed.

STOREY, Justice Ad Litem, concurring:

I agree with the lower court and the majority in this appeal that Plaintiffs are entitled to the declaratory and injunctive relief they seek. However, in the view I take of this case, I find it unnecessary to reach and resolve the constitutional issues this appeal otherwise presents.

It is the well settled judicial policy of this State that constitutional questions will not be decided unless their determination is essential to the disposition of the case. *Downs v. Jacobs*, Del.Supr., 272 A.2d 706, 708 (1970); *State ex rel. Davis v. Woolley*, Del.Supr., 97 A.2d 239, 242, 243

---

**9.** It has not been argued that the contract concept would govern a new term for one or more of the plaintiffs. That could conceivably raise a question in the future which is not in issue here and not answered by our reliance here on the Constitution of the State of Delaware.

(1953). Courts will not ordinarily consider constitutional matters unless a decision can be reached on no other grounds. *Collison v. State ex rel. Green*, Del.Supr., 2 A.2d 97, 107, 108 (1938); *Application of Pepper*, Del.Gen. Sess., 54 A.2d 173, 174 (1947). It is a cardinal rule of statutory construction that a statutory scheme must be so construed, if fairly possible, to avoid the conclusion that it is unconstitutional. *Collison v. State, ex rel. Green, supra* 2 A.2d at 103. The view that the lower court took of this controversy, with which I concur, pays homage to these fundamental tenets of judicial restraint.

The Vice Chancellor construed the words of the statutes and amendment in question together, finding a legislative intent manifested that the amendment to the judicial pension law should have application, prospective only, to each "new member" of the Delaware judiciary. I agree.

The legislature, of course, is deemed to have intended what it has said in legislation. See e. g. *Harlan v. Fidelity and Casualty Co.*, 139 N.J.Super. 226, 353 A.2d 151, 152 (1976). Legislative intent is found not in what the legislature meant to say but in the meaning of what it did say. See e. g., *Dana-Robin Corp. v. Common Council of City of Danbury*, Conn.Supr., 348 A.2d 560, 567 (1974). In this connection, weight must be given to each and every word used in a legislative enactment. *State v. Brown*, Del. Supr., 195 A.2d 379, 383 (1963). That is, effect must be given to every part of a statute, where possible, so that no part will be inoperative. *DiSabatino v. Ellis*, Del. Supr., 184 A.2d 469, 473 (1962). The majority's finding that the increased rate of contribution applies to these Plaintiffs, who were incumbent judges at the time the 1976 amendment became effective, fails to give effect to the terms of § 5605(a) making provisions of the pension law available to "new members" of the judiciary. Such an interpretation, in my view, impermissibly ignores the express words of the statute. For this reason, to the extent the majority says to validate the lower court's prospective application of the 1976 amendment would be to "strain the construction of the statute to the point of preventing its purpose", I disagree. The legislature's purpose and intent is expressed in the terms of § 5605(a), which make the provisions of Title 29, Ch. 56 available to "each new member of the state judiciary . . .". Of necessity, the 1976 amendment to § 5601(a), without a further amendment of § 5605(a), would apply only to "each new member of the state judiciary . . .", none of which these Plaintiffs are. Therefore, I find the lower court's construction neither strained nor that it frustrates the purpose of the statute. Regardless, even if the Vice Chancellor's interpretation of the statute calling for application of the increased contribution rate to "new members" of the bench appears strained, ". . . it is to be remembered that a strained construction of a statute is permissible to save it against constitutional attack . . ." *Mills v. State*, Del.Supr., 256 A.2d 752, 758 (1969).

Had the general assembly intended the 1976 amendment increasing the rate of contribution to be applied to present Delaware judges as well as "new members" of the bench, it would have been but a simple matter to amend § 5605(a) at the same time to include language sufficient to accomplish this. In its failure to do so, I, like the Vice Chancellor below, find the General Assembly intended no such result.

Viewed another way, in the present controversy two constructions of the pension law and the amendment are possible. The one chosen by the lower court called for prospective application of the new contribution rate. The other, adopted here by the majority, finds the 1976 amendment applicable to judges who presently hold office, here the Plaintiffs, who have elected to participate in the pension program. The latter construction necessarily calls into question the constitutional issues presented under the Delaware and federal constitutions. However, when two constructions of a statute are possible and one of them is unconstitutional, this Court is bound to accept the one which is constitutional. *Opinion of the Justices*, Del.Supr., 177 A.2d 205, 211 (1962); *Vaughan v. Veasey*, Del.Super., 125 A.2d 251, 253, 254 (1956). The General Assembly is deemed to

have intended to enact valid and constitutional legislation and statutes will be so construed whenever possible, without doing violence to legislative intent. *Maxwell v. Vetter*, Del.Supr., 311 A.2d 864, 867 (1973). See also, for instance, *Monacelli v. Grimes,* Del.Supr., 99 A.2d 255, 267 (1953) where this Court construed changes effected by the 1953 codification of the Delaware non-resident motorist long arm statute, as prospective in application, thereby avoiding ". . . the hazard of a decision upon a constitutional question". The decision of the lower court is in accord with these authorities.

Any other construction of the judicial pension law and the 1976 amendment, in my view, would run afoul of Article XV, Section 4 of the Delaware constitution and Article I, Section 10 of the United States constitution, for the reasons expressed in the opinion below, as well as by the majority of this Court in this appeal. But in adhering to traditional notions of judicial restraint, I find it unnecessary to decide these ultimate questions of constitutional law. It is for these reasons that I would affirm the decision below.