William MARVEL and Robert C. O'Hara, Plaintiffs,

v.

Ernst DANNEMANN, Leonard J. Bardsley, David G. Burton, David Marshall, Keith Dorman and Thomas R. Carper, and The State of Delaware, Defendants.

Civ. A. No. 79-351.

United States District Court, D. Delaware.

April 29, 1980.

---

7. *See also Plamondon ex rel. Cowlitz Tribe v. United States*, 467 F.2d 935, 199 Ct.Cl. 523 (1972).

Victor F. Battaglia and Samuel R. Russell of Biggs & Battaglia, Wilmington, Del., for plaintiffs.

Regina M. Small, State Sol., Dept. of Justice, Wilmington, Del., for defendants.

## OPINION

STAPLETON, District Judge:

This case involves the State of Delaware Judicial Pension Plan, Chapter 56 of Title 29 of the Delaware Code. Plaintiffs are two members of the state judiciary who, since 1976, have been required to contribute a larger amount of their salary to the judicial pension fund pursuant to the provisions of 60 Del.Laws c. 649 (1976), amending 29 Del.C. § 5601 ("the 1976 Amendment"). Plaintiffs claim that this Amendment is unconstitutional as to them as an impairment of the obligation of contracts, and have brought suit against the members of the Board of Pension Trustees, the State Treasurer, and the State of Delaware for a declaratory judgment and for reimbursement of wrongfully withheld contributions. Jurisdiction is based on the general federal question provision, 28 U.S.C. § 1331. The case is before me on plaintiffs' motion for summary judgment.

The State of Delaware has since 1955 provided members of the state judiciary with an optional contributory pension plan. As originally enacted, a judge could elect to participate in the plan by following the procedure outlined in 29 Del.C. § 5606, (50 Del.Laws c. 119) which provided in pertinent part:

§ 5606. Acceptance of provisions; result

(a) Each new member of the State Judiciary, as it is presently or may hereafter be established by Article IV, Section 2, of the Constitution of Delaware, may accept the provisions of this chapter at the beginning of his first term of office by written declaration to that effect,

which declaration shall be filed in the office of the Secretary of State. Upon the filing of such written declaration by a member of the State Judiciary, the benefits of this chapter shall be available to him. Present members of the State Judiciary shall elect whether or not they desire to accept the provisions of this chapter within 30 days after this chapter becomes law.

(b) . . . A declaration of acceptance shall . . . authorize deductions for the contributions provided for in section 5602 of this chapter.

Later the same year, § 5606 was amended (50 Del.Laws c. 533) to provide as follows:

§ 5606. Acceptance of provisions; result

(a) Each member of the State Judiciary, whether by appointment and confirmation or as a result of this Act, may accept the provisions of this Chapter by written declaration to that effect within 30 days following his becoming a member of the State Judiciary. The declaration of acceptance shall be filed in the office of the Secretary of State. Upon the filing of such written declaration by a member of the State Judiciary, the benefits of this Chapter shall be available to him. Any Judge who was, prior to the approval of this Act, a member of the State Judiciary, who has not already done so, may file his written declaration of acceptance of the provisions of this Chapter within 30 days after this Act becomes law.

(b) Any declaration of acceptance of this Chapter as hereinbefore provided shall constitute an authorization and direction by the member of the State Judiciary making the same that if a certificate of permanent physical or mental incapacity of such member shall be thereafter filed as provided for in § 5603(c) of this [title], such certificate shall, without any further act by such member, be deemed to constitute a resignation by such member, effective immediately after the filing of such certificate. A declaration of acceptance shall also authorize

deductions for the contributions provided for in § 5602 of this Chapter.

That provision continues in effect through the present.[1]

At the time of enactment, Section 5602 governed the amount of each member's contribution. It provided for a contribution rate of 5% of the first $7,500 of an electing judge's annual salary, with any deficiencies in the Fund to be made up by transfers from the State's general fund. 29 Del.C. § 5602, 50 Del.Laws c. 119.

In 1967, the amount of benefits under the pension plan was substantially increased by 56 Del.Laws c. 198. At the same time, the General Assembly amended 29 Del.C. § 5602(a) to read as follows:

(a) The State Judiciary Retirement Fund shall be established and maintained by the Trustees. The State Treasurer shall act as the Trustees' agent in the care of the assets of the Fund. Each member of the State Judiciary who elects to accept the provisions of this chapter shall contribute each year for the first 25 years of service but not thereafter the lesser of $500 or 5% of total compensation to the Fund. Such contribution shall be prorated on a monthly basis.

Thus, the maximum annual contribution was increased from $375 to $500 for up to 25 years. The General Assembly provided an election provision to allow active or retired judges to remain within the provisions of the prior law, with the smaller contributions and benefits. Section 5 of chapter 198 provided that "if such election is not made within 90 days following the passage of this Act, such Judges, active or retired, shall be considered to have elected to come under the provisions of this Act."

Plaintiff William Marvel first became a member of the state judiciary on September 8, 1954, when he was sworn in as Vice Chancellor of the State of Delaware. Shortly after the voluntary pension plan was enacted in 1955, he filed a declaration of acceptance and began to contribute to the Fund. His second term of office began

1. It is now § 5605 of Title 29.

in September of 1966, but he was not required to file a new election. The Treasurer continued to deduct Plan contributions from his salary on a monthly basis. When the Plan was revised in 1967, Vice Chancellor Marvel did not file an election under 56 Del.Laws c. 198, and therefore he was considered to have elected to come within the new provisions of the Plan.

Plaintiff Robert C. O'Hara was sworn in as Associate Judge of the Superior Court of the State of Delaware on March 31, 1966. He filed his declaration of acceptance under Section 5606 in April of that year, and also declined to file an election to stay within the provisions of the old law when the Plan was amended in 1967.

The contribution rate of the Plan was greatly increased by the 1976 Amendment. As amended, 29 Del.C. § 5601(a) reads as follows:

(a) The State Judiciary Retirement Fund shall be established and maintained by the Board of Pension Trustees. The State Treasurer shall act as the Board of Trustees' agent in the care of the assets of the Fund. Each member of the state judiciary who elects to accept the provisions of this chapter shall contribute to the Fund each year an amount equal to 5% of his total compensation which exceeds $6,000. Such contributions shall be prorated on a monthly basis, and shall commence with the first pay period ending after June 30, 1976.

For a vice chancellor or judge earning $46,000 per year, as plaintiffs are now, this amendment had the effect of increasing the yearly contribution from $500 to $2,000. It also eliminated the 25-year contribution limit previously in effect. Neither an increase in benefits nor an election provision to remain within the provisions of the old law was provided. The increased contributions were deducted from plaintiffs' salaries commencing June 30, 1976.

As a result of the 1976 Amendment, a number of state judges brought suit in the state court to have the increased deductions declared invalid. In *Carper v. Stiftel*, 384 A.2d 2 (1977), the Supreme Court of Delaware held that the 1976 Amendment violated Article XV, § 4 of the State Constitution by diminishing the "salary or emoluments" of public officers after their appointments. In the course of its decision, the majority of the Court rejected the lower court's ruling that the Amendment was intended to apply only to new members of the judiciary, and held that the Amendment "expressly contemplated that existing participants were intended to be included in the Amendment." 384 A.2d at 5. Because of its impact on the salaries of judges whose terms began before its effective date, the Delaware Supreme Court held the Amendment invalid as to those judges.

The Delaware court expressly declined to rule on the federal constitutional claim that the 1976 Amendment impaired the obligation of contracts in violation of Article I, Section 10 (the Contract Clause). It noted, however, that "we lean to the view that the judicial pension statute with its voluntary contribution feature can create contractual rights which cannot be unreasonably changed by the unilateral action of the General Assembly." 384 A.2d at 7.

One reason for the Court's declining to consider the Contract Clause issue was its recognition that "the general law, as illustrated by decisions of this Court, is somewhat unclear on the question of when pension and other employee contract rights become vested." *Id.* The Court did note, however, that the Contract Clause question could be raised in the future when one or more of the plaintiffs began a new term. *Id.* at fn. 9.

This is the situation now before this Court. Plaintiff Marvel took the oath of office as Chancellor on September 29, 1976, after the effective date of the 1976 Amendment. By September of 1979, he had completed 25 years of service as a member of the state judiciary, but pension fund deductions continued to be taken from his salary.

On March 23, 1978, plaintiff O'Hara took the oath of office for his second term as

Associate Judge of the Superior Court.[2] According to defendants, the new terms of office established plaintiffs as "new members" of the judiciary, who took office subject to the newly-operative statutory pension plan provisions. Plaintiffs contend that they had vested contractual rights in the pre-1976 scheme and that the 1976 Amendment, if applied to them, would impair the obligation of contracts protected by Article I, Section 10.

Plaintiffs argue initially that the 1976 Amendment does not apply to them because they did not elect to accept its provisions. This line of argument is foreclosed by the holding in *Carper v. Stiftel, supra,* that the Amendment was intended to apply to all members of the judiciary, present and future, who had elected to participate in the pension system. Plaintiffs' failure to elect to participate in the post-Amendment scheme cannot by itself insulate them from its provisions.

■ The defendants initially advanced the argument that judges, being public officers rather than employees, have no contract rights protected by the Contract Clause. Counsel for defendants conceded at oral argument, however, that the State could contract with its officers through legislation; thus, the question of whether the State did so contract is one of legislative intent. The Delaware courts have been willing in the past to find such intent even in the case of a compulsory contribution scheme. *In re State Employees Pension Plan,* Del.Supr., 364 A.2d 1228 (1976). It thus seems likely that such intent would be found in a statutory scheme characterized by an offer on the part of the State and a voluntary acceptance of that offer by an offeree. Therefore, I conclude that the State judiciary pension plan can create contract rights which are subject to the protection of the Contract Clause.

This being the case, traditional concepts of contract law should be examined to determine when, if ever, one party may alter the terms of this contract between the State and the plaintiffs. Plaintiffs urge that the contract is a bilateral one which was accepted and fully executed at the time that they each filed a declaration of acceptance agreeing to contribute to the Fund. Defendants argue that the contract was unilateral, to be accepted by performance, and imply that such a finding would allow the offeror to change the terms of the offer up to the time performance is complete. While the voluntary acceptance aspect of the judicial pension plan, with its implied promise that an accepting judge will continue to contribute to the Fund in exchange for the promise of an eventual pension, seems more in keeping with a bilateral than a unilateral contract, I find that I need not resolve this issue.

■ It is conceded by defendants that Chancellor Marvel had fulfilled the age and service requirements prior to the effective date of the 1976 Amendment. As a matter of contract law, there can be no question, therefore, that his performance of these conditions created a binding, irrevocable contract which could not be unilaterally altered by the offeror. "[T]he services contracted for have clearly been performed," and have given rise to a vested right in the pre-1976 terms of the pension plan. *Delaware Trust Co. v. Delaware Trust Co.,* 222 A.2d 320 (Del.Ch.1966). The attempt by defendants to alter those terms by requiring a higher rate of contribution for a longer time than that contracted for clearly must fail. Chancellor Marvel was entitled to retire and receive a pension in 1976. His choice to continue to serve in the state judiciary should not result in significant detriment to him, particularly in light of the purpose of public pension plans of encouraging persons to enter and remain in public service. *In re State Employees Pension Plan,* 364 A.2d 1228, 1235 (Del.Supr. 1976); *Dorsey v. State ex rel. Mulrine,* 283 A.2d 834 (Del.Supr.1971). Chancellor Marvel must be given the benefit of his bar-

---

**2.** There was a hiatus of approximately 2 weeks between the end of Judge O'Hara's first term and the beginning of his second term.

gain. "[I]f there has once been unequivocal acceptance, the contract is complete and its binding force cannot be affected by subsequent communications unless they amount to a mutual agreement to rescind or abandon the contract." 1 Williston on Contracts § 72 (3d ed. 1957).[3]

▆ Judge O'Hara was admittedly not eligible for retirement on the effective date of the 1976 Amendment. Viewing his contract with the State as a unilateral one, however, it is clear that he had rendered substantial partial performance prior to the Amendment. The offer made by the state in 1966 and revised by mutual consent in 1967 called for him to remain in the state judiciary and authorize certain deductions for the Fund for up to 25 years. To date, he has carried out his part of the bargain, and has agreed to serve a second term as judge of the Superior Court.[4]

It is well settled that an offer of a unilateral contract becomes binding and irrevocable when partial performance is rendered by the offeree. The First Restatement of Contracts stated the rule as follows:

> § 45. Revocation of Offer for Unilateral Contract; Effect of Part Performance or Tender.
>
> If an offer for a unilateral contract is made, and part of the consideration requested in the offer is given or tendered by the offeree in response thereto, the offeror is bound by a contract, the duty of immediate performance of which is conditional on the full consideration being given or tendered within the time stated in the offer, or, if no time is stated therein, within a reasonable time.

The Second Restatement carries this rule forward, though it speaks in terms of the partial performance creating an "option contact" with the offeror's duty to perform being conditional on the completed performance by the offeree. Restatement, Second, of Contracts § 45. *See also* 1 Williston on Contracts § 60A (3d ed. 1957). This rule has been accepted in the Delaware courts. *Abbott v. Stephany Poultry Co.*, 62 A.2d 243 (Del.Super.1948). The doctrine has been frequently applied to the area of employee pension plans. *See* 1A Corbin on Contracts § 153 (1963); *Miller v. Dictaphone Corp.*, 334 F.Supp. 840 (D.Or.1971); *Sylvestre v. State*, 298 Minn. 142, 214 N.W.2d 658 (1973).

Therefore, even with respect to Judge O'Hara, it is clear that the State cannot revoke its earlier offer and now demand substantially more in exchange for its promise of a pension than it did when partial performance was begun.

▆ Defendants urge, however, that even if plaintiffs possess vested rights under the Contract Clause, that Clause does not protect them against all possible revisions of contract terms. They correctly point out that states retain some reserve power to modify the terms of their own contracts as well as those of private parties when the public interest so requires. *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). "As with laws impairing the obligations of private contracts, an impairment [of a contract with the State] may be constitutional if it is reasonable and necessary to serve an important public purpose." *Id.* at 25, 97 S.Ct. at

---

**3.** Defendants do not suggest any subsequent act by Chancellor Marvel which indicated an intention or even a willingness to rescind the pre-1976 contract. In light of his evident inability to authorize less than the increased deduction *and still remain a member of the plan*, I decline to find that his failure to retire or withdraw as a member amounted to an acceptance of the new terms.

**4.** Defendants make much of the two-week interlude between terms, arguing that Judge O'Hara was a "new member" of the judiciary at the beginning of his second term in 1978 and

thus accepted the 1976 Amendment provisions. However, Judge O'Hara was not required to file a new declaration of acceptance to authorize payroll deductions, nor did he do so. If defendants' current view of the effect of commencing a second term of office were correct, defendants would have no effective authorization to make any deductions from Judge O'Hara's salary. Defendants did not consider him to be a "new member" for the purpose of authorizing deductions for the Fund, and they cannot now be heard to say that his continued service constituted acceptance of the new terms.

1519. However, a court must apply caution when assessing the reasonableness of an impairment when the State is a party to the contract. "[C]omplete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State's self-interest is at stake." *Id.* at 26, 97 S.Ct. at 1519.

The first question to be addressed in the assessment of "reasonableness and necessity" is the extent of the impact of the legislation on the private party or parties. *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244–45, 98 S.Ct. 2716, 2722, 57 L.Ed.2d 727 (1978); *see El Paso v. Simmons*, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965). As noted earlier, the effect of the 1976 Amendment is to require a judge making $46,000 per year to contribute an additional $1,500 to the pension fund over the maximum required under prior law. The percentage of his or her salary going to the Fund is increased from 1.1% to 4.3%. As judicial salaries rise, the percentage of income contributed to the Fund will rise with them toward 5%, since the post-1976 scheme excludes only the first $6,000 in salary from the contribution base.[5] The change effected by the 1976 Amendment accordingly is a very substantial one. Similar increases in pension contributions unaccompanied by increased benefits have been found to be unreasonable by a number of State courts. *See, e. g., Allen v. City of Long Beach*, 45 Cal.2d 128, 287 P.2d 765 (1955); *Opinion of the Justices*, 364 Mass. 847, 303 N.E.2d 320 (1973); *cf. In re State Employees' Pension Plan*, 364 A.2d 1228 (Del.Supr.1976).

In *Allen v. City of Long Beach, supra*, for example, an amendment to the pension statute would have increased an employee's contribution from 2% of income to 10%, without affording the employee any new advantages over the existing pension scheme. The California court struck down the modification, holding:

> To be sustained as reasonable, alterations of employees' pension rights must bear some material relation to the theory of a pension system and its successful operation, and changes in a pension plan which result in disadvantage to employees should be accompanied by comparable new advantages. . . .

287 P.2d at 767.

The Massachusetts Supreme Judicial Court held to similar effect in an advisory opinion when asked whether a proposed amendment to the state pension plan raising the rate of contribution from 5% to 7% would be constitutional. The court ruled that such an increase without a corresponding increase in benefits would be "presumptively invalid" as an impairment of contract, though it recognized that such a modification might be permissible under the police power if "proof of a catastrophic condition of the public finances" were presented. *Opinion of the Justices*, 364 Mass. 847, 303 N.E.2d 320, 330 (1973).

As this federal and state case law suggests, impact upon the adversely affected party is not the sole factor in the applicable equation. That adverse impact must be considered in light of the importance of the public interest purportedly served by the contract amendment and the need for the changes effected. In this case the defendants assert that the 1976 Amendments are designed to serve "the public interest in the fiscal integrity of the fund." Defendants' Brief at 11. If this were true, the public interest served would indeed be a substantial and important one. The absence of fiscal integrity in a pension plan seriously undermines the central purpose, attracting and retaining qualified employees.[6] But defendants do not suggest that

---

**5.** This is in contrast to the 1955 and 1967 schemes which set forth a ceiling on contributions which would always be substantially less than 5%.

**6.** Much of the case law on the subject indicates that maintaining the actuarial soundness and

integrity of a pension system is a justification for some modification of a pension plan. *See, Opinion of the Justices, supra; Harvey v. Retirement Board of Allegheny County*, 392 Pa. 421, 141 A.2d 197 (1955); *Clarke v. Ireland*, 122 Mont. 191, 199 P.2d 965 (Mont.1948); *Allen v.*

Delaware's Judicial Pension Plan has been unable to meet its obligations to retire jurists in the past or that it is likely to be unable to do so in the future. While it is clear that contributions from judges cannot alone support the benefits provided by the Plan and never were intended to do so, the Plan from the beginning has had a provision calling for contributions from the State's general fund of any amounts necessary to enable the Pension Fund to meet its commitments. This feature was retained when the 1976 Amendments were enacted and nothing in this record suggests that the necessary financial support for the Plan will not be forthcoming.

Thus, the effect of the 1976 Amendment is not to increase the fiscal integrity of the Fund, but rather to provide that public funds will bear substantially less of the costs of judicial pensions and that the judges will pay a correspondingly greater proportion of that cost. This may be a wise decision as a matter of policy and it is certainly one which the State is free to implement with respect to new members of the judiciary to whom it has no existing contract obligations. I think it clear, however, that the State is not entitled to implement that policy through the abrogation of contract rights in the absence of any showing that circumstances have substantially changed or that its finances are in a precarious state. *United States Trust Co. v. New Jersey*, 431 U.S. 1, 97 S.Ct. 1505, 52 L.Ed.2d 92 (1977). Since the defendants do not claim substantially altered circumstances or economic hardship, I conclude that plaintiffs are entitled to summary judgment.

Submit order.

*City of Long Beach, supra; Bakenhus v. City of* Seattle, 48 Wash.2d 695, 296 P.2d 536 (1956).