PIERRE S. DU PONT, State Tax Commissioner of Delaware, Plaintiff in Error, *v.* PERCY WARREN GREEN, Defendant in Error.

(*October* 26, 1937.)

WOLCOTT, Chancellor, HARRINGTON, RODNEY and SPEAKMAN, J. J., sitting.

*William H. Foulk* for Plaintiff in Error.

*P. Warren Green* for Defendant in Error.

Supreme Court, No. 1, January Term, 1936.

RODNEY, J., delivering the opinion of the Court:

We recognize that the Superior Court in reversing the decision of the State Tax Board rested its conclusion upon the ordinarily secure basis of two analogous decisions of the United States Supreme Court (*Evans v. Gore* [1920], 253 *U. S.* 245, 40 *S. Ct.* 550, 64 *L. Ed.* 887, 11 *A. L. R.* 519,

and *Miles v. Graham* [1925], 268 *U. S.* 501, 45 *S. Ct.* 601, 69 *L. Ed.* 1067), and we appreciate the natural disinclination of a Superior Court to fail to follow such decisions. When, however, the Supreme Court of a State is faced with the final construction of a provision of its own Constitution, it becomes imperative that a critical examination be made of the reasoning of any case which, by analogy, might aid in such construction, and this duty exists regardless of the high standing of the Court in which such other decision is rendered. With this end in view we approach a consideration of *Evans v. Gore, supra,* and other cases which hold that where a constitutional provision prohibits diminution of compensation of a public officer during his incumbency of the office, such compensation is not liable to the imposition of an income tax. In other words, we must determine whether an income tax applicable to all citizens alike does work a diminution of salary.

At the very outset we must make clear a very broad and comprehensive distinction. Every case cited by the Defendant in Error, with the possible exception of one, involves the question of a reduction of a judicial compensation. Almost every case recites, in varying language, the historical background of division of government into three co-ordinate branches, and shows that the judicial department is necessarily and inherently the weakest of the three. Each case then elaborates the necessity of placing the financial independence of the judiciary beyond the control of the strongest co-ordinate branch, the legislative branch, and many cases, as *Evans v. Gore,* quote the language of Hamilton that "a power over a man's subsistence amounts to a power over his will." With all of this reasoning we are in thorough accord, but it has no application to this case. Here we are not confronted with any diminution of judicial salary. The appellee claims exemption by reason of a constitutional provision,

"No law shall extend the term of any public officer or diminish his salary or emoluments after his election or appointment."

It is not necessary for us to determine whether the foregoing section has any application at all to the judicial department. It was determined in Pennsylvania (*Com. v. Mathues*, 210 *Pa.* 372, 59 *A.* 961) that a similar provision did not apply to the judiciary, but as to this we express no opinion.

It likewise is not necessary for us to determine the extent of that great class embraced within the term "public officer." The Defendant in Error claims exemption both as a constitutional and a statutory officer. Cases cited by him apply the term "public officer" to all officers holding for fixed terms.

In *State ex rel. Biggs v. Corley,* 6 *W. W. Harr.* (36 *Del.*) 135, 172 *A.* 415, it was held that members of the Board of Fish and Game Commissioners, Collectors of State Revenue and Notaries Public hold offices.

We mention the decision in *State ex rel. Biggs v. Corley, supra,* not because of its relevancy to the instant case, where the status of the taxable as a public officer is not questioned, but merely to show the wide implication of this case as possibly involving almost all who draw their compensation or emoluments from public sources.

We now direct our attention to the specific question as to the meaning of the constitutional provision, and whether an income tax payable by all citizens generally does, in fact, work a diminution of salary.

We are of the opinion that the quoted constitutional provision is intended, as expressed by the Court below, "to prohibit the diminution of the fixed compensation of a public official by reduction or abolition of salary, or to until his right thereto ceases whether by expiration of term, resignation or otherwise."

The provision is intended to safeguard the term of a public official and to deny to the Legislature or other salary fixing body the right to compel compliance from a public official by reduction or abolition of salary, or to allow a salary fixing body to thus express its political or other antagonism toward a properly selected official. The right of an official to the salary as it existed at the time of his election or appointment is, then, fixed, and this salary may not be diminished by any action of the salary fixing body, after such election or appointment.

█ There are many cases which correctly hold that Courts will enforce Constitutional provisions analogous to our own prohibiting the taxation or reduction of judicial or other protected salaries. This protection will be given whether the action be in the form of a tax which is directed against official salaries alone, as in *Com. ex rel. Hepburn v. Mann*, 5 *Watts & S. (Pa.)* 403, *In re Opinion of the Justices*, 225 *Ala.* 502, 144 *So.* 111, and *City of New Orleans v. Lea*, 14 *La. Ann.* 197, or where the salaries were reduced or an insufficient appropriation made to pay them, *Haggerty v. City of New York*, 153 *Misc.* 841, 276 *N. Y. S.* 722; *Summers v. Eckert*, 149 *Misc.* 27, 266 *N. Y. S.* 618; *Grimball v. Beatty*, 174 *S. C.* 422, 177 *S. E.* 668, and *People ex rel. Lyle v. City of Chicago*, 360 *Ill.* 25, 195 *N. E.* 451.

By *Chapter* 8, *Vol.* 36, *Laws of Delaware*, a tax, after allowance of certain exemptions and deductions, is based upon the net income of every taxable in the State, and the word "taxable," by the statute (*Section* 1 (*b*), includes substantially every adult person in the State. By the statute (*Section* 1 (*d*) the phrase "net income" among a large list of other items includes, "gains or profits and income * * * from any source whatever * * * salaries, wages and compensation for personal service of whatever kind and in whatever form paid."

This tax on income, then, is a tax on the acquisition of the taxable, regardless of its source, and although "salaries" (which word in its generality includes official salaries) figures in the computation of income, such official salaries are not made a special class and subjected to a special tax. They are simply among the elements that compose the taxable's acquisitions.

We do not think the inclusion of the salary of a public official in his gross income, nor the subsequent payment of the tax on his net income has worked a diminution of his salary as such. The wages or salary of every citizen of this State have not, as such wages or salary, been actually reduced by the payment of a tax on the net income ascertained by including such wages or salary in the gross income. No more can it be said that a salary, merely because it is paid to an official, is reduced by a tax similarly ascertained.

It has been suggested that to a public officer, having nothing but his salary, an income tax is no more a diminution of the salary than a gasolene tax or an amusement tax, or a tax assessed under the *Internal Revenue Laws. Poorman v. State Board of Equalization,* 99 *Mont.* 543, 45 *P.* (2d) 307.

We recognize that the original income tax laws of this State exempted the salary of public officers in office at the time of the passage of the Act and that, following the opinion of an eminent member of the Bar of this State, the State Tax Board originally accepted and acted upon this opinion. We think, however, that the opinion and practice of the Board founded thereon were largely based on the cases of *Long v. Watts,* 183 *N. C.* 99, 110 *S. E.* 765, 22 *A. L. R.* 277, and *Evans v. Gore,* 253 *U. S.* 245, 40 *S. Ct.* 550, 64 *L. Ed.* 887, 11 *A. L. R.* 519.

We reiterate that we think the true basis of these

decisions was the sound doctrine of maintenance of judicial independence, and we venture to express some doubt as to whether the result would have been the same had the constitutional provision been similar to our own as applying to every public officer. If we be in error as to this then we express a preference for the dissenting views in *Evans v. Gore*, as delivered by Mr. Justice Holmes and concurred in by Justice Brandeis. Justice Holmes saw no attack on the independence of a Judge by requiring him to pay a tax that all other men had to pay, regardless of their rank or station. He saw nothing in the purpose of the clause of the Constitution "to indicate that judges were to be a privileged class, free from bearing their share of the cost of the institutions upon which their well-being, if not their life, depends."

We see less expression of purpose to exempt every public official of the State.

Justice Holmes thought there was a point at which the immunity of the salary, as such, stops—a point at which the compensation was not diminished by a charge. That is the thought that we have tried to express when we said that the salary was not the yardstick of the tax, but that the tax was on the sum of all taxable's acquisitions (less exemptions and deductions), and that the salary was but an element of the acquisitions or income.

We prefer to leave to the opinion of Justice Holmes the showing that the majority opinion in *Evans v. Gore* was not consistent with the former adjudications of that Court.

With the exception of *Long v. Watts, supra,* the majority opinion in *Evans v. Gore* has not found favor in the State Courts. The Plaintiff in Error cited to the Court below, and to us, the cases of *Taylor v. Gehner,* 329 *Mo.* 511, 45 *S. W.* (2d) 59, 82 *A. L. R.* 986, and *State ex rel.*

*Wickham v. Nygaard,* 159 *Wis.* 396, 150 *N. W.* 513, *Ann. Cas.* 1917*A,* 1065. The second of these cases, while bearing a date prior to *Evans v. Gore,* contained reasoning utilized by Justice Holmes, and in *Taylor v. Gehner* the dissenting views of Justices Holmes and Brandeis were expressly adopted. To these cases may be added the much more recent opinion of *Poorman v. State Board of Equalization* (1935), 99 *Mont.* 543, 45 *P.* (2*d*) 307. There, in an elaborate opinion in which all of the cases are discussed, the Court reaches the same conclusion as reached by us.

In all of the cases heretofore considered the Judge or officer was in office at the time of the passage of the *Income Tax Law,* and the question discussed was whether the *Income Tax Law* worked a diminution of salary. The case of the Defendant in Error is not nearly so strong. Actually in the present case the Defendant in Error took office long after the passage of the Act under which the tax is claimed. The Act was passed April 2, 1929, and the Defendant in Error took office on January 2, 1933. The only authority holding that the salary of a Judge who took office subsequent to the passage of an Income Tax Law was exempt from the operation of such law is *Miles v. Graham,* 268 *U. S.* 501, 45 *S. Ct.* 601, 69 *L. Ed.* 1067. In *Miles v. Graham* it was held that a Judge of the Court of Claims taking office after the passage of the *Federal Income Tax Law* was not required to include his salary in his income tax return, because such tax would operate as a diminution of his compensation protected under *Section* 1 of *Article* 3 of the *Federal Constitution.* The force of *Miles v. Graham* has been weakened by *Ex parte Bakelite Corp.,* 279 *U. S.* 438, 49 *S. Ct.* 411, 73 *L. Ed.* 789, and *Williams v. U. S.,* 289 *U. S.* 553, 53 *S. Ct.* 751, 77 *L. Ed.* 1372, which held that the Court of Claims is a Legislative Court and not a Constitutional Court, and therefore not protected by *Article* 3 of the *Constitution.*

In 43 *Harvard Law Review* 894, 907, it is suggested that the *Bakelite Case* involves disapproval of the result reached in *Miles v. Graham,* and in 46 *Harvard Law Review* 680, it is suggested that *Miles v. Graham* was "overruled" by the cited cases.

Whether the use of the quoted term as indicative of the effect of the later cases on *Miles v. Graham* be correct or not, or whether *Miles v. Graham* remains merely as a hypothetical expression of opinion, it is certain that its present value has been greatly decreased. No other decision of like holding has been called to our attention.

We are of the opinion that the salaries of the Defendant in Error, as Deputy Attorney General and as Attorney General, were properly included in the Income Tax Return for the year 1933, and the judgment below is reversed.