**Vonna G. TAYLOR et al., Petitioners,**

**v.**

**The MUNICIPAL COURT FOR the CITY OF WILMINGTON et al., Respondents.**

Superior Court of Delaware.

New Castle.

Oct. 22, 1968.

Morris, Nichols, Arsht & Tunnell, David A. Drexler, Adrienne Arsht, Wilmington, O'Donnell, Hughes & Lowicki, Thomas G. Hughes, Wilmington, for petitioners.

O. Francis Biondi, George F. Gardner, III, Wilmington, for intervenor.

## OPINION

O'HORA, Judge.

Petitioners seek a Writ of Prohibition which would prohibit the Municipal Court of the City of Wilmington from assuming jurisdiction over certain criminal proceedings pending against them. The proceedings in the Municipal Court charge all petitioners, as defendants, with violation of Ordinance 67–061 of the City of Wilmington, Delaware. The basis of the petition before this Court is the claim that the Ordinance referred to is unconstitutional.

On Monday, April 8, 1968, the Mayor of the City of Wilmington declared an Emergency to exist, acting under the provisions

of Ordinance 67–061. Section 1, paragraph (a) of that Ordinance prohibits ten or more persons from gathering in a group in a public place, except for recreational purposes, while a declared Emergency remains in effect.

A group known as the Wilmington Anti-War Committee organized a public gathering in Rodney Square, Wilmington, Delaware, on Saturday, April 27, 1968, at a time when the Emergency remained in effect. The purpose of the gathering which took place was to thereby make known to the public and public officials the beliefs and attitudes of those involved concerning the conflict in Viet Nam, and also to publicize the positions of various political leaders and candidates toward this conflict.

It is agreed that the gathering which did take place was peaceful and orderly at all times. Shortly after the gathering assembled, however, the petitioners were arrested and charged with the violations pending in the Municipal Court. Petitioners initially asserted a number of constitutional objections, under both the Federal and State Constitutions, to the Ordinance in question. Here, however, they present a subsidiary motion for summary judgment with respect to their claim that the Ordinance is unconstitutional under the provisions of Article 1, Section 16 of the Delaware Constitution, Del.C.Ann. Other constitutional objections raised by petitioners' original motion are not here considered and, in fact and by agreement of the parties, have been held in abeyance until the issue here raised has been resolved.

Article 1, Section 16 of the Delaware Constitution reads as follows:

"Although disobedience to laws by a part of the people, upon suggestions of impolicy or injustice in them, tends by immediate effect and the influence of example not only to endanger the public welfare and safety, but also in governments of a republican form contravenes the social principles of such governments, founded on common consent for common good; yet the citizens have a right in an orderly manner to meet together, and to apply to persons intrusted with the powers of government, for redress of grievances or other proper purposes, by petition, remonstrance or address."

It is petitioners' position that, apart from any other question as to its validity, Ordinance 67–061 cannot be constitutionally applied to peaceful gatherings for political purposes. They argue that the express language of the Delaware Constitution quoted above prohibits any limitation on such gatherings for such purposes.

The respondents take the position that the Constitutional provision relied upon by petitioners is not as comprehensive in scope as urged by petitioners and is, in fact, necessarily subject to the State's inherent right and duty to regulate conduct when it is essential to public safety. This right is most commonly referred to as the Police Power of the State. It is the respondents' contention that the Constitutional provision involved, though seemingly absolute, should not be so interpreted as to prohibit the government from enacting legislation designed to protect the people and the government itself from anarchy.

■ The issue drawn by these proceedings, therefore, is whether or not the Constitutional provision is so broad as to exclude any legislative interference with complete freedom of peaceful assembly for political purposes, or whether there is a greater right, namely, the public safety, which must necessarily be read into such constitutional language as an exception thereto.

■ There are many decisions pertaining to State and Federal Constitutional rights to peacefully assemble, but there appear to be none directly interpreting the language used by the drafters of the Delaware Constitution. In such situations the

constitutional construction philosophy, enunciated by Judge Rodney in DuPont v. Green, 8 W.W.Harr. 566, 38 Del. 566, 195 A. 273, 114 A.L.R. 1184 (1937), is of considerable guidance:

"When, however, the Supreme Court of a State is faced with the final construction of a provision of its own Constitution, it becomes imperative that a critical examination be made of the reasoning of any case which, by analogy, might aid in such construction, and this duty exists regardless of the high standing of the Court in which such other decision is rendered."

In Mayor and Council of Wilmington v. Turk, 14 Del.Ch. 392, 129 A. 512 (1925), in which the police power of the City of Wilmington in the form of zoning ordinances was challenged, the court made the following pertinent comments with regard to the extent of police power in conflict with Constitutional provisions:

"Is the ordinance as applied to the defendant a constitutional exercise of authority? If valid, it must rest upon the police power of the state for its support. The extent and scope of that power is incapable of definition. That it may, notwithstanding it impinges upon rights vouchsafed by the literal language of constitutional provisions designed for the portection of the citizen in the use and enjoyment of his property, be exercised in the interest of the public peace, good order, safety, health and morals, has been repeatedly decided by the courts; * * *. No court has ventured to explore the extent of this power. It is a power which rests upon no express constitutional grant. It is a power evolved by judicial decision and is rooted in the conception that men in organizing the state and imposing upon their creature limitations for the protection of the citizen, did not intend thereby to secure to the individual citizen a right to obstruct the state in the pursuit of such salutary measures of control as are reasonably calculated to protect society generally in its peace, good order, safety, health and morals."

In Hoff v. State, 9 W.W.Harr. 134, 39 Del. 134, 197 A. 75 (1938), which involved the right to carry on a business without first obtaining a certificate required by statute, the Delaware Supreme Court spoke of the police power as "far reaching and elastic", embracing "everything essential to the public health, safety and morals". In referring to the limits of this power the same court said:

"To justify the State in interposing its authority in behalf of the public, it must appear that the interests of the public, as distinguished from those of a particular class, demand such interference; that the means employed are reasonably necessary for the accomplishment of the purpose; "

Judge William T. Quillen of this Court, in his recent letter opinion in State v. Hodsdon, 526 Cr.A. 1967, (opinion dated January 15, 1968), in dealing with an alleged infringement of constitutional rights to freedom of speech, has pointed out that, "when particular conduct is regulated in the interest of the public and the regulation results in an abridgment of speech, the Court must decide which of the two interests demands the greater protection".

Petitioners here argue that even if it be conceded that the "police power" theoretically limits all constitutional rights, it can only be exercised after some positive demonstration that the right to peaceably assemble, for a political purpose, is in fact contrary to the peace, good order, safety, health or morals. The contention is that such a demonstration, in this case, is impossible in view of the admission that petitioners were engaged in a "peaceful" gathering.

Petitioners, in reality, are making the same argument from two different positions. First they say that they have a constitutional, specified right to do exactly

what they were doing, and, secondly, that even if the police power may be superimposed in a public disorder situation, such was not the case here.

■ Petitioners' arguments founder on one essential point. The imposition of police powers are not so restricted that they cannot be used except in situations which are at that very moment disorderly. Certainly, potential disorder cannot and should not be the only criteria of when the police power may validly be exercised to restrict personal freedoms. In the present posture of the issue as presented to this Court we have the exercise of that power only in an actual emergency situation, duly designated as such, and about which there is no present dispute.

The adoption of petitioners' contentions here would be tantamount to saying that the drafters of the Delaware Constitution deliberately handcuffed society so that under no circumstances, including a threat to its very survival, could resort be had to the use of its police power to protect itself.

■ A close examination of the language used in Article 1, Section 16, does not support such thinking. It should be noted, for example, that in the prefatory explanation to the grant of the right of peaceful political assembly, reference is made to the fact that disobedience of laws, upon suggestions that they are injust, "tends" to endanger public welfare and safety. Nevertheless, so reads the provision, the right of citizens to meet in an orderly manner, for political purposes, is protected. The vital difference here is that the declaration of an "emergency", in itself, establishes that the prohibited meetings are unlawful. No longer, given such circumstances, can meetings such as petitioners be looked upon as "tending" to endanger public safety. By definition their acts did, in fact, endanger public safety.

■ In reaching the conclusion that Ordinance 67–061 was not, per se, unconstitutionally applied to petitioners' peaceful political meeting, the Court is not unmindful of the fact that the police power universally receives its widest application when in conflict with property rights, and is most limited in its application when in conflict with personal rights. When a society, as here, has attempted to carefully prescribe times of great danger to public safety, and such a time by definition exists, then even personal rights may be reasonably limited. In this instance that part of the Ordinance prohibiting gatherings of ten or more was invoked. No argument is here made that the restriction was unreasonable as to class, or numbers, or the existence of a duly constituted emergency. In such circumstances the application of the police power so as to interfere with the personal right of assembly was not unconstitutional.

In reaching the conclusion herein stated the Court has given consideration to the decision of the United States Supreme Court in Brown v. Louisiana, 383 U.S. 131, 86 S.Ct. 719, 15 L.Ed.2d 637 (1965). That case, decided under the Federal Constitution, admittedly is far reaching in its application of constitutional protection to a peaceful assembly. However, that decision finds application in an entirely different factual setting than here presented. The conclusion of that Court might well be different if the actions of the assemblers were to occur in the midst of an active, riotous situation, or, as here, in the midst of a declared emergency.

For the reasons herein set forth the Court concludes that petitioners' motion for summary judgment should be denied.

It is so ordered.