William Swain LEE, Plaintiff
Below, Appellant,

v.

STATE BOARD OF PENSION
TRUSTEES, Defendant
Below, Appellee.

No. 399, 1999.

Supreme Court of Delaware.

Submitted: Oct. 4, 1999.
Decided: Oct. 22, 1999.

Craig A. Karsnitz, Young, Conaway, Stargatt & Taylor, LLP, Georgetown, for appellant.

Marc P. Niedzielski, Deputy Attorney General, Department of Justice, of Wilmington, for appellee.

Before VEASEY, Chief Justice, WALSH and HOLLAND, Justices.

PER CURIAM:

The plaintiff-appellant, William Swain Lee, is a 63 year-old jurist who is serving on the Superior Court of the State of Delaware ("Judge Lee"). Judge Lee filed an action in the Court of Chancery of the State of Delaware requesting declaratory and injunctive relief against the State Board of Pension Trustees ("Pension Board"). The parties voluntarily transferred the proceeding from the Court of Chancery to the Superior Court. The following two questions have been certified by the Superior Court to this Court:

1. Was [Judge Lee's] unexercised option to participate, as a member of the Judiciary appointed prior to 1980, in the Revised Judicial Pension Plan under 29 Del.C.Ch. 56 an emolument of office under Art. XV, § 4 of the Delaware Constitution so that its elimination would be unconstitutional?

2. If [Judge Lee's] option to participate in the Revised Judicial Pension Plan is an emolument of office, did he waive any claim to that emolument when he knowingly and voluntarily executed his elec-

tion to remain in the Closed Judicial Pension Plan in accordance with 29 Del.C. § 5605 as revised?

We have concluded that the answer to the first certified question is "yes" and that the answer to the second certified question is "no."

*FACTS*

Judge Lee was first appointed as an Associate Judge of the Family Court on July 12, 1977. Thereafter, on July 10, 1986, he was appointed as an Associate Judge of the Superior Court of the State of Delaware. On May 10, 1989, Judge Lee was appointed for a 12–year term to his current judicial office, Resident Judge of the Superior Court for Sussex County. Thus, he has served continuously as a member of the judiciary for more than twenty-two years.

Judge Lee contends that a 1998 amendment to Section 5605(b) of the State Judicial Pension Act is invalid because it violates Article XV, § 4 of the Delaware Constitution by diminishing an emolument of his judicial office. Accordingly, he argues that he retains the pre–1998 right to change his participation from the Closed Judicial Pension Plan [1] to the Revised Judicial Pension Plan [2] at anytime. Pursuant to the terms of the Revised Judicial Pension Plan, he is eligible to retire immediately and begin receiving pension benefits.

Judge Lee conveyed his position in writing to the Administrator of the State Pension Plans ("Administrator") on June 3, 1999. The Administrator responded on June 11, 1999. The Administrator ruled that Judge Lee did not have the right to change from the Closed Judicial Pension Plan to the Revised Judicial Pension Plan.

Judge Lee then filed a complaint for declaratory and injunctive relief in the

---

1. The Closed Judicial Pension Plan refers to the original State Judicial Pension Plan created in 1955.

2. The Revised Judicial Pension Plan refers to the State Judicial Pension Plan created in 1980.

Court of Chancery. In response to Judge Lee's complaint, the Pension Board raised two procedural objections. The first objection was that, as a condition precedent to judicial review, the Pension Board must first review the Administrator's denial of Judge Lee's claim. The second objection challenged Judge Lee's attempt to invoke the Court of Chancery's equity jurisdiction.

The Pension Board's first procedural objection was resolved when the parties agreed to have the Board of Pension Trustees review the Administrator's denial of Judge Lee's claim on an expedited basis. The Pension Board heard Judge Lee's appeal on July 30, 1999. The Pension Board upheld the decision of the Administrator, ruling that:

> Judge Lee voluntary signed the form on November 20, 1998 indicating that he elected to remain in the Closed Judicial Pension Plan. Judge Lee was under no obligation to return this form to the Pension Office. Judge Lee voluntarily waived the option to elect the Revised Plan and that choice is irrevocable.[3]

Therefore, the Pension Board concluded that it did not have to consider Judge Lee's constitutional challenge.

Following the Pension Board's decision, the Pension Board's second procedural objection was resolved when the parties agreed to transfer Judge Lee's lawsuit from the Court of Chancery to the Superior Court.[4] The parties then filed a stipulated request to certify the questions of

law raised by Judge Lee to this Court. The two questions of law that were duly certified to this Court have been briefed and argued on an expedited basis.

### Delaware Judicial Pensions Relevant Statutory History

We begin our analysis with an examination of the relevant statutory history. A separate Delaware judicial pension system was originally established by the State Judiciary Pension Act in 1955.[5] Although that statute has been amended many times, it has always had several unique features. First, each new member of the Delaware judiciary must affirmatively express a written desire to participate in the pension system.[6] Second, each new judge must authorize the deduction of contributions to the pension fund from his or her salary.[7] Third, in consideration for the benefits conferred by participation, each judge agrees that the act of filing a certificate of his or her permanent physical or mental incapacity, in the statutory form prescribed by Section 5602(c), shall constitute his or her immediate resignation from office.[8]

In 1976, the General Assembly amended the State Judiciary Pension Act by requiring an increased contribution rate for participation in the judicial retirement system. The Judges of the Superior Court filed a lawsuit alleging that the 1976 amendment, as applied to them, violated the Delaware Constitution.[9] A specially constituted Supreme Court[10] agreed, and held that the

---

**3.** *In Re: The Appeal of the Hon. William S. Lee,* State Bd. of Pension Trustees, Appeal No. 9907 (Order) (August 16, 1999).

**4.** Because Judge Lee serves on the Superior Court, the President Judge requested that the Chief Justice appoint another eligible jurist to sit in the Superior Court for the purpose of hearing and deciding Judge Lee's case. Accordingly, Chancellor William Chandler was specially appointed as a judge of the Superior Court. *In Re: Designation of the Honorable William B. Chandler,* under Del. Const. art. IV, § 13(2) (ORDER) (August 4, 1999).

**5.** 29 *Del.C.* ch. 56.

**6.** 29 *Del.C.* § 5605(a).

**7.** *Id.*

**8.** 29 *Del.C.* § 5605(c).

**9.** *Stiftel v. Carper,* Del.Ch., 378 A.2d 124 (1977).

**10.** When all of the active members of this Court entered disqualifications, the Governor appointed three distinguished former jurists as *Ad Litem* Justices to constitute the Delaware Supreme Court for the purpose of deciding that case. Those *Ad Litem* Justices were

1976 amendment to the State Judiciary Pension Act violated Article XV, § 4 of the Delaware Constitution because it diminished the emoluments of incumbent judges during the tenure of their appointed terms.[11]

On July 11, 1980, in response to the *Stiftel* decision, the General Assembly amended the State Judiciary Pension Act by removing the unconstitutional provision in Section 5601 and creating a dual system of pensions.[12] The General Assembly established a new plan, the Revised Judicial Pension Plan ("Revised Plan"), which became the only pension system available to all members of the Judiciary appointed after July 1, 1980. The Revised Plan required participating judges to make higher contributions than the original plan, which became the Closed Judicial Pension Plan ("Closed Plan").[13] The Revised Plan also provided extra benefits over the Closed Plan, however, including the right to collect retirement pay at an earlier age, i.e., at age 62 rather than age 65.[14]

In the preamble to the legislation that created the Revised Plan, the General Assembly stated, "[I]t is the further intent of this legislation to provide sitting judges with the *right* to elect continued participation in the current plan or participation in the revised plan...."[15] Initially, members of the Closed Plan, i.e., jurists appointed before June 30, 1980, had the right to elect to participate in the Revised Plan by July 1, 1981. That election had to be made by filing a written declaration with the Secretary of State.[16]

The General Assembly enacted several subsequent amendments to that election provision in the State Judiciary Pension Act.[17] In 1982, an amendment provided that members of the Closed Plan could exercise their option to elect participation in the Revised Plan by filing a declaration with the Secretary of State by July 1, 1983.[18] In 1983, the General Assembly amended the statute to provide that: "A member first appointed before July 1, 1980, may elect to be covered by the revised plan by filing a declaration of acceptance in the Office of the Secretary of State."[19] The synopsis to the 1983 amendment indicated that its purpose was to allow members of the Closed Plan to elect participation in the Revised Plan by filing their declarations of acceptance at any time during their tenure.

---

also appointed to hear and decide a different challenge by the same Superior Court Judges in a companion case. Del. Const. art. IV § 15. *See* Joseph T. Walsh, *Judicial Independence: A Delaware Perspective*, 2 Del.L.Rev. (Delaware State Bar Association, Wilmington, Del.), 1999, at 11–14.

11. *Carper v. Stiftel*, Del.Supr., 384 A.2d 2 (1977).

12. 62 *Del.Laws*, c. 415 (1980). Upon examining the language of the preamble to that legislation and its synopsis, the Attorney General concluded:

It is clear, therefore, that the legislature's intent was to fund the State Judicial Pension Plan on an actuarially sound basis beginning in 1980, which basis took into account the $500 per year maximum contribution of all judges appointed prior to 1980. It is, therefore, my opinion that the clear language of the statute, as well as the attendant legislative expressions of intent, indicate that the maximum amount to be collected from judges for pension contributions is not to exceed $500 for the first 25 years of service. This, of course, only applies to those judges appointed before July 1, 1980. (Op. Att'y Gen. dated March 10, 1981).

13. The Revised Plan requires contributions of 3% of all compensation over $6,000 up to the social security wage base, and 5% of total compensation in excess of the Social Security wage base thereafter compared to a fixed contribution of $500 per year in the Closed Plan. 29 *Del.C.* § 5601(a)(2).

14. 29 *Del.C.* §§ 5602, 5612.

15. 62 *Del.Laws*, c. 415 (1980) (emphasis added).

16. 62 *Del.Laws*, c. 415, § 13 (1980).

17. 29 *Del.C.* § 5605(b).

18. 63 *Del.Laws*, c. 330, § 1 (1982).

19. 64 *Del.Laws*, c. 202, § 1 (1983).

In 1985, the Delaware Attorney General addressed the operation of the 1983 amendment with regard to Closed Plan members' right to elect participation in the Revised Plan.[20] In a formal Opinion to the chairman of the Pension Board, the Attorney General examined the question of "whether a member of the Closed Judicial Pension Plan ("the Closed Plan") may elect to join the Revised Judicial Plan ("the Revised Plan") at any time before his retirement and, if so, from what point are his contributions under the Revised Plan rate to be calculated?"[21] The Attorney General concluded that, pursuant to the 1983 amendment to the Judicial Pension Act, "a member of the Closed Plan may elect to join the Revised Plan at any time prior to retirement and that he must contribute at the Revised Plan rate from the date of the election to join that plan."[22] In reaching this decision, the Attorney General stated:

> Thus, it is plain that there is no limitation on the time at which a member of the judiciary who is covered by the Closed Plan may elect to join the Revised Plan. If there were any doubt about the meaning of that section, the legislative history resolves it in favor of our reading. The Synopsis says: "This bill allows any member covered under the closed pension plan to become covered under the new plan at anytime."[23]

The Attorney General acknowledged that this interpretation of the statute could result in members of the Closed Plan electing to join the Revised Plan on the eve of leaving judicial office, thus avoiding the higher Revised Plan contributions but receiving the Revised Plan benefits upon retirement.[24] The Attorney General con-

cluded that the unambiguous terms of the statute following the 1983 amendment compelled this result.

In 1998, thirteen years after the Attorney General's Opinion, the General Assembly enacted legislation that limited and then eliminated the ability of the Closed Plan members to elect participation in the Revised Plan.[25] Specifically, the General Assembly amended Section 5605(b) of the Judicial Pension Act by adding the following sentence:

> Unless an election to participate in the Revised Plan is filed on or before December 15, 1998, a member first appointed before July 1, 1980 shall be deemed to have made an irrevocable election to remain in the Closed Plan.[26]

The synopsis to the 1998 amendment explained the purpose of that legislation:

> [The amendment] refers to current members of the Closed Plan having the ability to contribute to the Closed Plan and then opt[ing] to elect the Revised Plan prior to retirement. The employee contributions to the Closed Plan are much lower, while the benefits for the Revised Plan could be higher. This election will ensure that members that elect the Revised Plan will pay employee contributions at the Revised Plan rates.[27]

Accordingly, Section 5605(b) currently provides:

> A member first appointed before July 1, 1980, may elect to be covered by the revised plan by filing a declaration of acceptance in the office of the Secretary of State. Unless an election to participate in the Revised Plan is filed on or

**20.** Closed Judges Pension Plan, Op. Att'y Gen., 85–1013 (Aug. 26, 1985).

**21.** *Id.*

**22.** *Id.*

**23.** *Id.* (*citing* S.B. 163, enacted as 64 *Del. Laws*, c. 202 (1983)).

**24.** In fact, during the 1980s, two members of the Closed Plan did elect to participate in the

Revised Plan immediately prior to concluding their terms of judicial office.

**25.** 71 *Del.Laws*, c. 365, § 4 (1998).

**26.** *Id.*

**27.** Synopsis to Senate Bill No. 353, May 14, 1998.

before December 15, 1998, a member first appointed before July 1, 1980, shall be deemed to have made an irrevocable election to remain in the Closed Plan.[28]

Judge Lee seeks to have the 1998 amendment to Section 5605(b) declared unconstitutional, arguing that it violates Article XV, § 4 of the Delaware Constitution by diminishing an emolument of his judicial office.

### Salary and Emoluments Delaware Constitutional History

■ Judicial independence is a cornerstone of our legal system.[29] The *sine qua non* of judicial independence is the freedom to decide cases without fear of retribution. Alexander Hamilton stated:

> The complete independence of the courts of justice is peculiarly essential in a limited Constitution. . . . Limitations of this kind can be preserved in practice no other way than through the medium of courts of justice, whose duty it must be to declare all acts contrary to the manifest tenor of the Constitution void. Without this, all of the reservations of particular rights or privileges would amount to nothing.[30]

This nation made its Declaration of Independence, in part, because the King of England "made judges dependent upon his Will alone, for the tenure of their office, and the amount and payment of their salaries."[31]

The constitutional questions that have been certified to this Court require an interpretation of Article XV, § 4 in the Delaware Constitution. Article XV, § 4 reflects part of Delaware's constitutional commitment to preserving the independence and integrity of its judiciary for more than two centuries.[32] Its most venerable antecedent is found in the 1792 Delaware Constitution, which was modeled after a similar provision in the United States Constitution.

In 1787, the Framers of the United States Constitution provided for judges to "hold their Office during good Behavior, and shall at stated Times, receive for their Services, a Compensation, which shall not be diminished during their continuation in office."[33] The Framers concluded that it was necessary to restrict the power of the legislature to "change the condition of the individual [judge] for the worse."[34] According to Hamilton, the term "diminished" in the Compensation Clause forbade any action that would result in such a change.[35] James Madison concurred with this view and further stated that "compensation" extended to all "emoluments" of the judicial office.

> [M]embers of each department should be as little dependent as possible on those of the others for the emoluments annexed to their offices. Were the executive magistrate, or the judges, not independent of the legislature in this particular, their independence in every other would be nominal.[36]

**28.** *29 Del.C.* § 5605(b).

**29.** Erwin Chermerinsky et al., *What is Judicial Independence? Views From the Public, The Press, The Profession, and The Politicians*, 80 *Judicature*, Sept.–Oct.1996, at 73.

**30.** *The Federalist* No. 78, at 466 (Alexander Hamilton) (Clinton Rossiter ed.1961).

**31.** *The Declaration of Independence* para. 10 (U.S.1776).

**32.** *See* Joseph T. Walsh, *Judicial Independence: A Delaware Perspective*, 2 Del.L.Rev. (Delaware State Bar Association, Wilmington, Del.), 1999, at 1. *See also* Maurice A. Hartnett, III, *Delaware's Charters and Prior Constitutions, in The Delaware Constitution of 1897: The First One Hundred Years* 21–53 (Randy J. Holland & Harvey Bernard Rubenstein eds., 1997).

**33.** U.S. Const. art. III, § 1.

**34.** *The Federalist* No. 79, at 473 (Alexander Hamilton) (Clinton Rossiter ed., 1961).

**35.** *Id.*

**36.** *The Federalist* No. 51, at 321 (James Madison) (Clinton Rossiter ed., 1961).

As the first state to ratify the United States Constitution, Delaware was familiar with its provisions. When the 1792 Delaware Constitution was adopted, it included some provisions that were similar to those in the United States Constitution and many provisions that were modified after careful consideration.[37] Although the section providing for judicial compensation and tenure in the 1792 Delaware Constitution was more expansive than its counterpart in the 1787 United States Constitution, two important concepts were identical. The 1792 Delaware Constitution provided for judges to hold their offices "during good behaviour .... [and to ...] receive for their services adequate salaries, to be fixed by law, which shall not be diminished during· their continuance in office...."[38]

It is not surprising that the 1792 Delaware Constitution included these two specific provisions protecting judicial independence. Section 22 in the Declaration of Rights and Fundamental Rules of the Delaware State, enacted September 11, 1776, had provided:

> That the independency and uprightness of judges are essential to the impartial Administration of Justice, and a great Security to the Rights and Liberties of the People.[39]

The 1897 Delaware Constitutional Convention delegates considered several issues that were related to the independence of the judiciary.[40] The delegates soundly rejected the concept of electing judges in favor of appointment by the Governor. They also added a provision for confirmation of judicial nominees by the Senate and required essentially a bipartisan judiciary.[41] The delegates changed the tenure of judicial service from "good behavior" to a fixed term of twelve years.[42] They also decided to not only retain the provision from the 1792 Delaware Constitution that prohibited a diminution in judicial salaries, but expanded it to include emoluments of office and extended this constitutional protection to *all* public officers in Delaware.[43]

With regard to extending to all public officers the prohibition against diminishing their compensation, the Delaware Constitutional Convention delegates debated the provision that ultimately became Article XV, § 4 in the 1897 Delaware Constitution, which provided:

> No law shall extend the term of any public· officer or diminish his salary or emoluments after his election or appointment.

Before this section was adopted, the delegates discussed its necessity. In comparing it to the similar provision in the Pennsylvania Constitution from which it was derived, William R. Spruance stated:

> In Pennsylvania a constitutional provision of this character contained in almost identically this language is found, but that the additional words "or increase" are in there. No·law shall extend the term of any public officer, or

---

**37.** *Claudio v. State,* Del.Supr., 585 A.2d 1278 (1991).

**38.** *See also* Del. Const. of 1792, art. VI, § 2. *See Proceedings of the House of Assembly of the Delaware State, 1781–1792, and of the Constitutional Convention of 1792* (Claudia L. Bushman et al. eds., 1988).

**39.** Vol. 1, *Del.C.* p. 111.

**40.** Joseph· T. Walsh and Thomas J. Fitzpatrick, Jr., *Judiciary: Article IV, in The Delaware Constitution of 1897: The First One Hundred Years* 121, 131–136 (Randy J. Holland & Harvey Bernard Rubenstein eds., 1997).

**41.** *Id. See also* Joseph T. Walsh, *Judicial Independence: A Delaware Perspective,* 2 Del. L.Rev. (Delaware State Bar Association, Wilmington, Del.), 1999, at 1.

**42.** Joseph T. Walsh and Thomas J. Fitzpatrick, Jr., *Judiciary: Article IV, in The Delaware Constitution of 1897: The First One Hundred Years* 121, 131–136 (Randy J. Holland & Harvey Bernard Rubenstein eds., 1997).

**43.** Michael N. Castle and Bruce M. Stargatt, *Miscellaneous Article, Article XV, in The Delaware Constitution of 1897: The First One Hundred Years* 184, 189–190 (Randy J. Holland & Harvéy Bernard Rubenstein eds., 1997).

increase or diminish his salary or emoluments, after his election or appointment. The Committee thought it wise not to put in those words "or increase." The danger there is that you cut off a man's term, or you diminish his office because he doesn't do what you want him to do.[44]

Mr. Spruance, in responding to concerns voiced by Andrew L. Johnson regarding the wisdom of such a constitutional provision, explained:

[T]his proposed amendment, so far as it relates to Constitutional terms, means that the Legislature shall not have the power to extend the terms, nor to diminish salaries.[45]

Article XV, § 4 of the Delaware Constitution was adopted by the 1897 Convention, as proposed. Its purpose has been succinctly explained, as follows:

[C]onstitutional provisions such as ours are designed not merely to safeguard the officials concerned, but, more importantly, in doing so, to protect the public from having to deal with officials who might treat them unfairly out of the dread of such personal disfavor as could result in a salary cut or the loss of some cherished emolument, i.e., to preserve the independence of those officers.[46]

Accordingly, Article XV, § 4 protects the independence of all Delaware public officers, not only judges, from the vicissitudes of partisan politics. The early decisions that interpreted Article XV, § 4 did not involve judges[47] but established four bright-line principles:

[First]: Constitutional provisions of the character of article 15, section 4, of the Constitution of this State, will not permit the diminution of an officer's salary or emoluments after his election or appointment. If such a course were permissible, when a change of administration took place it might happen that the Legislature would reduce the salary of the appointees of the opposing political party.[48]

[Second]: The term "emoluments" is defined as "the profit arising from office or employment; that which is received as compensation for services, or which is annexed to the possession of office as salary, fees and prerequisites; advantage; gain, public or private."[49]

[Third]: Such provisions are mandatory and prevent either direct or indirect changes. This proposition is supported by many decided cases.[50]

[Fourth]: A constitutional provision forbidding the change of the compensation of an official during his term of office is inexorable. It admits of no exception and it affords no opportunity for evasion by the Legislature or other body.[51]

The 1977 decisions in Carper v. Stiftel and Stiftel v. Malarkey, are the seminal opinions construing the application of these four bright-line principles to statutory enactments involving the judiciary. In Carper v. Stiftel, this Court held that the definition of "emoluments," as that term is used in Article XV, § 4 of the Delaware Constitution, includes a judicial pension system[52] and that a diminution can be

**44.** 4 Debates and Proceedings of the Constitutional Convention of the State of Delaware 2675 (1958).

**45.** *Id.* at 2676.

**46.** *Stiftel v. Malarkey*, Del.Supr., 384 A.2d 9, 15 (1977) (*citing Du Pont v. Green*, Del.Super., 8 W.W.Harr. 566, 195 A. 273, 275 (1937)).

**47.** See Michael N. Castle and Bruce M. Stargatt, *Miscellaneous Article, Article XV, in The Delaware Constitution of 1897: The First One Hundred Years* 184, 189–190 (Randy J. Holland & Harvey Bernard Rubenstein eds., 1997).

**48.** *Barr v. Blackstone*, Del.Super., 13 A.2d 449, 451 (1940).

**49.** *Id.*

**50.** *Id.* (emphasis added).

**51.** *Id.*

**52.** *Carper v. Stiftel*, Del.Supr., 384 A.2d 2 (1977).

caused by an increase in pension contributions as well as a decrease in benefits.[53] In *Stiftel v. Malarkey,* a companion case to the Superior Court Judges' litigation in *Carper,* this Court held that statutory enactments in 1976 that took away from public officers the prospective cost of living increments that had been legislated in 1975, violated Article XV, § 4 of the Delaware Constitution.[54]

In 1979, the General Assembly responded to the holding in *Stiftel v. Malarkey* by amending Article XV, § 4 to clarify what would constitute a diminishment in salary or emoluments.[55] Thus, the amendment states that neither salary nor emoluments should be "construed to mean increases in salary or emoluments scheduled by statute for a future date and not yet received by the officer."[56] That amendment did not disturb, however, the holding in *Carper v. Stiftel* that a pension system was an emolument of judicial office that could not be diminished. Moreover, the amendment provides that "salary or emoluments" does include "actual salary or emoluments being provided an officer at any time during his tenure in office." The amended Article XV, § 4 now states, in relevant part:

No law shall extend the term of any public officer or diminish the salary or emoluments after his election or appointment. The term "salary or emoluments" as used herein refers to the actual salary or emoluments being provided an officer at any time during his tenure in office and shall not be construed to

mean increases in salary or emoluments scheduled by statute for a future date and not yet received by the officer.

This Court has not been called upon to construe Article XV, § 4 since the amendment became effective in 1979.

### Section 5605(b) 1998 Amendment Unconstitutional

 It is well established that a judge is a public officer.[57] It is equally well established that a judicial pension system constitutes "salary or emoluments" as those terms are used in Article XV, § 4 of the Delaware Constitution.[58] Consequently, the sole issue presented by the first constitutional question certified to this Court is whether the 1998 amendment to Section 5605(b) diminished Judge Lee's "salary or emoluments" during his term of office.

The term emolument has been defined as: "the profit arising from office or employment; that which is received as compensation for services, or which is annexed to the possession of office as salary, fees and perquisites; advantage; gain, public or private."[59] The 1983 amendment to Section 5605(b) conferred an unconditional right upon members of the Closed Plan to elect to participate in the Revised Plan *at any time during their tenure.*[60] By deleting the date certain when Closed Plan members would be required to exercise that option, the General Assembly "annexed to the possession of office as salary, fees and perquisites" the unqualified right

53. *Id.* at 7.

54. *Stiftel v. Malarkey,* Del.Supr., 384 A.2d 9, 15 (1977) (*citing Du Pont v. Green,* Del.Super., 8 W.W.Harr. 566, 195 A. 273, 275 (1937)).

55. 61 *Del.Laws,* c. 530 (1978), *enacted by* 62 *Del.Laws,* c. 82 (1979). In Delaware, all proposed constitutional amendments must be voted on and passed by a two-thirds majority in each House of the General Assembly in two consecutive biennial terms. Del. Const. art. XVI, § 1. The amendment of Article XV, § 4 was introduced in 1978 and was passed by a two-thirds majority of the Second Session of the 129th General Assembly. It became effec-

tive after it was re-introduced in 1979 and was passed by a two-thirds majority of the First Session of the 130th General Assembly.

56. *Id.*

57. *Stiftel v. Carper,* Del.Ch., 378 A.2d 124 (1977).

58. *Id.*

59. *Barr v. Blackstone,* Del.Super., 13 A.2d 449, 451 (1940).

60. 64 *Del.Laws,* c. 202 § 1 (1983).

of Closed Plan members to elect participation in the Revised Plan at any time prior to the conclusion of their terms of judicial office.

■ By amending Section 5605(b) in 1998 to include a date certain when Closed Plan members were required to exercise their option to participate in the Revised Plan, the General Assembly diminished an emolument of judicial office that had been conferred in 1983. The constitutional prohibition against the diminution of a public officer's emolument of office in Article XV, § 4 has been held to be "inexorable."[61] There are no exceptions to this constitutional precept and it cannot be evaded.[62]

Judge Lee's right to participate in the Revised Judicial Pension Plan at any time was an open window of opportunity that was unequivocally granted by the 1983 amendment to Section 5605(b). Thus, that window cannot later be closed because it is plainly an emolument of his judicial office. The limitations placed upon Judge Lee's right to change his participation from the Closed Plan to the Revised Plan in 1998 and the ultimate elimination of that right diminished his vested emolumentary right to make that election at any time prior to the conclusion of his active judicial tenure. Accordingly, the 1998 amendment to Section 5605(b) violated Article XV, § 4 of the Delaware Constitution.

Having reached that conclusion, it is appropriate to repeat some prior comments by this Court and the United States Supreme Court with regard to statutory enactments that affect judicial compensation. This Court has stated:

Almost every case recites, in varying language, the historical background of division of government into three coordinate branches, and shows that the judicial department is necessarily and inherently the weakest of the three. Each case then elaborates the necessity of placing the financial independence of the judiciary beyond the control of the strongest coordinate branch, the legislative branch, and many cases ... quote the language of Hamilton that "a power over a man's subsistence amounts to a power over his will." With all this reasoning we are in thorough accord.... [63]

Similarly, the United States Supreme Court has noted:

It is essential in all courts that the judges who are appointed to administer the law should be permitted to administer it under the protection of the law, independently and freely, without favor and without fear. This provision of the law is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences.[64]

Since 1776, the State of Delaware has recognized "that the independency and uprightness of judges are essential to the impartial administration of justice and a great security to the right and liberties of the people."[65] The protections to judicial independence that are afforded by Article XV, § 4 can be modified by a future amendment to the Delaware Constitution. The Delaware judiciary can only "maintain its institutional independence with the cooperation of the other two branches and the support of an informed public."[66]

**61.** *Barr v. Blackstone*, Del.Super., 13 A.2d 449, 451 (1940).

**62.** *Id.*

**63.** *DuPont v. Green*, Del.Supr., 8 W.W.Harr. 566, 195 A. 273, 275 (1937).

**64.** *Bradley v. Fisher*, 13 Wall. 335, 80 U.S. 335, 349 n. 16, 20 L.Ed. 646 (1871).

**65.** 1776 Declaration of Rights and Fundamental Rules of the Delaware State, Section 22.

**66.** *See* Joseph T. Walsh, *Judicial Independence: A Delaware Perspective*, 2 Del.L.Rev. (Delaware State Bar Association, Wilmington, Del.), 1999, at 1.

### *1998 Election Form Rights Not Waived*

■ The second question certified to this Court is whether Judge Lee waived his rights under Article XV, § 4 of the Delaware Constitution by signing and submitting the Judicial Pension Election Form on November 20, 1998. The Pension Board argues that Judge Lee knowingly and voluntarily waived his option to elect participation in the Revised Plan, and that his choice is irrevocable pursuant to 29 *Del.C.* § 5605(d), which states: "Any declaration filed or authorization made pursuant to this section shall be irrevocable." Judge Lee argues that since the election form from the Office of Pensions was sent to him pursuant to an unconstitutional statute, he did not waive his rights by executing that form.

The Judiciary Pension Act requires members of the judiciary to file a written declaration in the Office of the Secretary of State stating their intention to participate in the Judicial Pension Plan.[67] Judge Lee filed the requisite declaration on July 6, 1977, soon after being appointed to his first judicial office. At the same time, Judge Lee authorized pension deductions by filing a written declaration with the Secretary of State. Only the Closed Plan was in existence at that time.

On July 11, 1980, the Revised plan was created.[68] After the enactment of the Revised Plan, Judge Lee was notified of his right to elect to participate in the Revised Plan. In a letter dated October 8, 1980, Judge Lee advised the Secretary of State of his intention to remain in the Closed Plan.

On October 16, 1998, the Office of Pensions sent a letter to Judge Lee informing him of the 1998 amendment to Section 5605(b). The Judicial Pension Election Form was enclosed, stating at the bottom that "This form must be return [sic] by December 15, 1998 or you will remain in the Closed Judicial Pension Plan." On November 20, 1998, Judge Lee signed his name below a line that read "I elect to remain in the Closed Judicial Pension Plan."

The question of waiver presented to this Court raises two issues. The first issue is whether Judge Lee's submission of the Judicial Pension Election Form in 1998 was a voluntary and intentional relinquishment of his 1983 right to exercise his option to participate in the Revised Plan at any time. The second issue is whether Judge Lee's submission of the Judicial Pension Election Form in 1998 was a voluntary and intentional relinquishment of his right to challenge the constitutionality of the 1998 amendment to Section 5605(b).

Judge Lee's execution of the Judicial Pension Election Form in 1998 does not constitute a waiver of his right to elect participation in the Revised Plan at any time. In 1998, Judge Lee was already a participant in the Closed Plan. He would have remained in the Closed Plan if he had never executed the Judicial Election Form in 1998 that expressed his desire to remain in the Closed Plan. Therefore, the election form had no effect on Judge Lee's 1983 right to change his participation from the Closed Plan to the Revised Plan at any time.

Furthermore, an incorrect legal conclusion was expressed in the Pension Office's letter of October 16, 1998 that purported to require the Judge to make an election to the Revised Plan by returning the form "by December 15, 1998 or you will remain in the Closed Judicial Pension Plan." Since we now hold that it is unconstitutional to eliminate the Judge's right to choose by closing the window the General Assembly opened indefinitely in 1983, the Pension Office could not have accurately and effectively stated that the Judge must make the election at that time. The election requirement therefore is a nullity.

The Judicial Election Pension Form that Judge Lee returned in 1998 did not include the word "irrevocable." We have conclud-

---

67. 29 *Del.C.* § 5605(a).

68. 62 *Del.Laws* c. 415 (1980).

ed that the 1998 amendment to Section 5605(b), which "deemed" Judge Lee's election to remain in the Closed Plan to be irrevocable, violated Article XV, § 4 of the Delaware Constitution. There is no record support for the Pension Board's argument that Judge Lee voluntarily agreed to waive or relinquish any future challenge to the constitutionality of the 1998 amendment to Section 5605(b).

### *Conclusion*

The answer to the first certified question is "yes." The answer to the second certified question is "no." This matter is remanded for further proceedings in accordance with this opinion. The mandate shall issue immediately.