RESOLUCIÓN
Hoy cumplimos con nuestro deber constitucional de ser el tribunal de última instancia en nuestro País, a pesar de que la controversia ante nos versa sobre un asunto que *1069 afecta directamente a cada juez del Tribunal General de Justicia: el retiro de los miembros de la Judicatura. Ante tal lamentable e incómoda situación en la que nos han puesto las Ramas Políticas, entiéndase, el Gobernador de Puerto Rico y la Asamblea Legislativa, hacemos nuestras las palabras del Juez Asociado del Tribunal Supremo federal, Hon. Stephen G. Breyer:
[E]nfrentamos la seria y embarazosa situación de decidir un asunto que afectará directamente nuestros propios bolsillos; y, al hacerlo, podríamos arriesgar la buena opinión que tiene el Pueblo de este Tribunal en la medida en que esa opinión des-cansa en la creencia de que sus jueces no persiguen sus pro-pios intereses. Sin embargo, el derecho requiere que los jueces decidan casos en los que tienen interés personal cuando, como en este caso, no existe una disposición para traer otro juez que decida el caso o cuando nadie más puede ocupar su lugar. Tampoco deberían los jueces, quienes están llamados a prote-ger las causas menos populares y las personas menos popula-res cuando la Constitución así lo requiera, dejarse influenciar por la situación embarazosa potencial que ello implicaría. Siempre que un Tribunal considere un asunto sobre el cual la opinión pública es fuerte, este se arriesga al rechazo público. No obstante, el Pueblo estadounidense ha entendido la nece-sidad y la importancia de que los jueces decidan asuntos cons-titucionales importantes sin tener en cuenta consideraciones de popularidad. (Traducción nuestra y citas omitidas). Williams v. United States, 535 US 911, 919 (2002), voto particular del Juez Breyer.(1)
*1070 I
Hace unos días, el Gobernador de Puerto Rico, Hon. Alejandro García Padilla, firmó la Ley Núm. 162 del 24 de diciembre de 2013 (Ley Núm. 162-2013). Esta ley de vigen-cia inmediata tiene como propósito reformar el Sistema de Retiro de la Judicatura.
El 30 de diciembre de 2013, la Asociación Puertorri-queña de la Judicatura (Asociación) presentó una Solicitud de Sentencia Declaratoria (Solicitud) ante el Tribunal de Primera Instancia. KAC2013-1042 (905). En esencia, soli-citó que esta ley “sea declarada inconstitucional por violar varios artículos de la [C]onstitución del Estado Libre Aso-ciado de Puerto Rico”. Apéndice de la Petición de certifica-ción, pág. 6.
Ese mismo día, la Asociación presentó ante nos una Pe-tición de Certificación en la que señaló que más del sesenta por ciento de los jueces activos son miembros suyos. Sos-tuvo, además, que estos jueces no deberían atender la pe-tición de sentencia declaratoria por conflicto de interés. Asimismo, destacó que el resto de los jueces activos tam-bién se pueden ver afectados directamente por lo que en su día se resuelva en este caso.
La Jueza Superior a quien se le asignó inicialmente el caso se inhibió mediante Resolución. Luego, el caso fue rea-signado al Juez Superior, Hon. Angel R. Pagán Ocasio, quien emitió inmediatamente una Orden mediante la cual consolidó la Solicitud de epígrafe con una Solicitud de Sen-tencia Declaratoria e Injunction presentada previamente por el Juez del Tribunal de Apelaciones, Hon. German J. Brau. K PE2013-5512 (904). En síntesis, este también im-pugnó la constitucionalidad de la referida ley y solicita un injunction preliminar y permanente para prohibir que esta sea puesta en vigor. Además, el Juez Pagán Ocasio emitió una Resolución en la que señaló que la Asociación presentó ante nos la Solicitud de Certificación de epígrafe, por lo que *1071 entendió prudente aguardar por nuestra determinación. Además, sostuvo que “[s]e ordena a los abogados de los casos consolidados de epígrafe que tan pronto sean notificados de tal determinación nos notifiquen la misma”.
Por los fundamentos expuestos a continuación, expedi-mos el auto de certificación y lo consolidamos con la refe-rida Solicitud de Sentencia Declaratoria e Injunction pre-sentada por el Juez del Tribunal de Apelaciones, Hon. German J. Brau, K PE2013-5512 (904).
II
A. Regla de Necesidad
Como norma general, un juez se debe inhibir en casos en que tenga conflicto de interés o un prejuicio sobre la controversia o sobre los litigantes. Regla 63 de Procedimiento Civil, 32 LPRA Ap. V. Sin embargo, el ordenamiento jurídico provee una excepción a esta norma: la Regla de Necesidad. Véanse: Ramírez de Ferrer v. Mari Brás, 142 DPR 941 (1997); Noriega Rodríguez v. Gobernador, 120 DPR 267 (1988). Al respecto, el Prof. José J. Álvarez González explica que “[e]sta norma jurisprudencial de an-tigua estirpe permite, como excepción a las normas sobre inhibición, [...] que los jueces participen en la decisión de un pleito en cuyo resultado tengan interés, cuando no sea posible sustituirlos o su participación sea necesaria para constituir quorum en un tribunal colegiado”. J.J. Álvarez González, La Asamblea Legislativa de Puerto Rico y las pensiones de los Jueces del Tribunal Supremo: Reseña de un conflicto con la independencia judicial, 56 (Núms. 2-3) Rev. Jur. UPR 265, 273 (1987). De lo contrario, las partes que entablen este tipo de litigio se verían privadas de reclamar ante los Tribunales un remedio adecuado en ley. íd. Véase, además, M.H. Redish y L.C. Marshall, Adjudicatory *1072 Independence and the Values of Procedural Due Process, 95 (Núm. 3) Yale L.J. 455, 492-493 (1986).
En palabras del tratadista inglés Frederick Pollock, “aun cuando el estado de derecho establece que un juez no debe intervenir en un caso en el que tiene interés personal, no solo debe, sino tiene que hacerlo si el caso no se adjudi-caría de otra forma”. (Traducción nuestra). F. Pollock, A First Book of Jurisprudence 270, 6ta ed., Mcmillan, 1929 (“the settled rule of law is that, although a judge had better not, if it can be avoided, take part in the decision of a case in which he has any personal interest, yet he not only may, but must do so if the case cannot be heard otherwise”). En tal ocasión excepcional, “[l]as reglas de in-hibición o recusación no tienen el efecto de derogar la regla de necesidad porque si así fuese se les negaría a los litigan-tes su derecho de acceso a un foro”. J.A. Cuevas Segarra, Práctica procesal puertorriqueña: procedimiento civil, San Juan, Pubs. JTS, 1979, Vol. II, págs. 432-433.
Esta Regla ha sido reconocida e invocada por el Tribunal Supremo de Estados Unidos, así como por los tribuna-les de más alta jerarquía de los estados. Véase Evans v. Gore, 253 US 245 (1920). Véanse, además: Board of Trustees v. Hill, 472 N.E.2d 204 (Ind. 1985); Oakley v. Gainer, 331 S.E.2d 846 (W.Va. 1985); United States v. Will, 449 US 200 (1980). Sobre este particular, el profesor Álvarez Gon-zález explica que “[l]a más frecuente aplicación de esta re-gla es precisamente en casos que versan sobre los salarios, pensiones o condiciones de empleo de la [J]udicatura”. Álvarez González, supra, pág. 273 esc. 29, citando a Board of Trustees v. Hill, supra; Hudson v. Johnstone, 660 P.2d 1180, 1183 (Alaska 1983); Wagoner v. Gainer, 279 S.E.2d 636, 639-640 (W.Va. 1981); Olson v. Cory (I), 636 P.2d 532, 535 (Calif. 1980); United States v. Will, 449 US 200, 211-217 (1980); Stiftel v. Carper, 378 A.2d 124, 126-127 (Del. Ch. 1977), confirmado subnom. Carper v. Stiftel, 384 A.2d 2 (Del. 1977); People ex. rel. Illinois Fed. of Teach. v. Lind- *1073 berg, 326 N.E.2d 749, 751 (I1. 1975). De esta forma, se evita que este tipo de controversias eluda la revisión judicial reconocida en Marbury v. Madison, 5 US 137 (1803).
Por ejemplo, el Tribunal Supremo federal aplicó esta re-gla en 1920 cuando resolvió un caso sobre el carácter contributivo de los salarios de los jueces federales, a pesar de que todos los miembros de esa Curia se afectarían directamente. Evans v. Gore, supra.
En numerosas ocasiones, este Tribunal también se ha visto obligado a invocar la Regla de Necesidad para inter-venir en controversias que encierran intereses en conflicto de los miembros de esta Curia.(2) Solo así, los integrantes de este Alto Foro han cumplido con su deber como máximos intérpretes de la ley en Puerto Rico. Art. V, Secs. 1 y 3, Const. ELA, LPRA, Tomo 1.
Expuesto lo anterior, veamos las normas que rigen el recurso de certificación intrajurisdiccional.
B. Recurso de Certificación Intrajurisdiccional
Mediante este recurso discrecional, el Tribunal Supremo puede traer inmediatamente ante su consideración cual-quier caso pendiente ante los foros inferiores cuando se planteen cuestiones noveles de derecho o de alto interés pú-blico que incluyan cualquier cuestión constitucional sustan-cial, la constitucionalidad de una ley, resolución conjunta, resolución concurrente, regla o reglamento. Alvarado Pa- *1074 checoy otros v. ELA, 188 DPR 594 (2013); U.P.R. v. Laborde Torres y otros I, 180 DPR 253, 272-273 (2010). Véase, además, J.A. Cuevas Segarra, Tratado de derecho procesal civil, 2da ed., San Juan, Pubs. JTS, 1979, T. IV, pág. 1541. Este recurso ha sido utilizado “para atender “asunto [s] que requier[en] urgente solución, [ya sea] porque se afect[a] la administración de la justicia o bien porque el asunto exija de una pronta atención por su importancia [...]”. Rivera v. J.C.A., 164 DPR 1, 7 (2005).
El recurso de certificación es de naturaleza excepcional, pues nuestro ordenamiento prefiere que los casos maduren durante el trámite ordinario para evitar determinaciones a destiempo por parte de este Foro. U.P.R. v. Laborde Torres y otros I, supra; Rivera v. J.C.A., supra. Ahora bien, este mecanismo procesal permite que dilucidemos casos que, de lo contrario, evadirían la revisión judicial. U.P.R. v. Laborde Torres y otros I, supra, pág. 273; Presidente de la Cámara v. Gobernador, 167 DPR 149, 160-161 (2006).
III
A. Aplicación de la Regla de Necesidad
Al aplicar la normativa anterior al recurso de marras, es innegable que su resolución puede afectar directamente los intereses de todos los jueces y las juezas de este Tribunal. No obstante, según expuesto, nuestra Constitución dispone claramente que “[e]l Poder Judicial de Puerto Rico se ejercerá por un Tribunal Supremo” y que este “será el tribunal de última instancia [...]”. Secs. 1 y 3, Const. ELA, supra. De hecho, esta Curia es un foro colegiado que solo puede declarar inconstitucional una ley mediante una mayoría del número total de sus Jueces, por lo que nuestra participación es necesaria para constituir quorum. Art. V, Sec. 4, Const. ELA, supra. Estas disposiciones constitucionales recogen los principios básicos de la doctrina de sepa- *1075 ración de poderes, la cual no permite que los jueces del Tribunal General de Justicia seamos sustituidos por otros entes adjudicativos ajenos a esta Rama de Gobierno. Id.
Consecuentemente, es imprescindible invocar en este caso la Regla de Necesidad. Solo así, aseguramos a las par-tes demandantes su derecho a tener acceso a un foro judicial que les pueda conceder el remedio solicitado, de ello proce-der en derecho, con la rapidez que requiere este asunto.
Habiendo invocado la Regla de Necesidad, examinemos si procede la petición de certificación intrajurisdiccional.
B. Procedencia del Recurso de Certificación Intrajurisdiccional
Indudablemente, los casos de epígrafe son de alto inte-rés público pues plantean una cuestión constitucional sus-tancial novel: la constitucionalidad de la Reforma del Sis-tema de Retiro de la Judicatura. Además, dado la vigencia inmediata de la Ley Núm. 162-2013, y como más del se-senta por ciento de los jueces activos son miembros de la Asociación y que el resto de los jueces activos también se podrían ver afectados directamente, este pleito exige la más pronta atención por parte de esta Alta Curia. Por úl-timo, la controversia es, en esencia, un asunto de estricto derecho.
Consiguientemente, procede traer los casos de epígrafe ante nos mediante la expedición del auto de certificación intrajurisdiccional. No puede ser de otra forma. Contrario a otras jurisdicciones, nuestra Constitución no provee un mecanismo mediante el cual se delegue la función judicial a un ente externo a la Judicatura. Véase I.P. Robbins, Justice by the Numbers: The Supreme Court and the Rule of Four-or Is It Five?, 36 Suffolk U.L. Rev. 1, 25 (2002). Véase, además, Oakley v. Gainer, supra. La función adjudicativa y de revisión judicial de este Foro es indelegable. Art. V, Const. ELA, supra. Incluso, ya vimos que la aplicación más frecuente de la Regla de Necesidad es en casos que tratan *1076 sobre los salarios, las pensiones y los emolumentos de la Judicatura. Álvarez González, supra.
De no invocarla, la Ley Núm. 162-2013, aprobada con vigencia inmediata y aplicable a todos los jueces en funciones, eludiría la revisión judicial reconocida hace más de dos siglos en Marbury v. Madison, supra, caso que, precisamente, involucraba jueces. Ese principio rector, que es la revisión judicial, está expresamente dispuesto en nuestra Constitución. Ignorarlo equivaldría a una clara abdicación de nuestra obligación constitucional de ser los intérpretes máximos de la Constitución y permitiría que las otras ramas de gobierno priven a la Rama Judicial y a este Tribunal de revisar judicialmente una ley, en clara violación a la doctrina de separación de poderes. Secs. 1, 3 y 4, Const. ELA, supra. En fin, por más incómodo y antipático que sea, no claudicaremos a nuestro deber constitucional de proveer a las partes demandantes un foro en el cual reclamar sus derechos.
IV
Por todo lo anterior, declaramos “con lugar” la Petición de Certificación. Por el alto interés público que reviste esta controversia, y considerando que la ley impugnada tiene vigencia inmediata, acortamos los términos reglamentarios y concedemos un término de diez días a las partes para presentar sus alegatos, de acuerdo con la Regla 50 de nues-tro Reglamento, 4 LPRA Ap. XXI-B. Además, ordenamos la celebración de una vista oral el 15 de enero de 2014 a las 10:00 a. m. para que las partes tengan la oportunidad de exponer sus respectivas posiciones y aclarar las dudas que nos puedan surgir sobre los asuntos planteados.

Publíquese y notifíquese inmediatamente a las partes y al Tribunal de Primera Instancia por teléfono, correo elec-trónico o fax, y notifíquese posteriormente por la vía ordinaria.

*1077 Lo acordó y ordena el Tribunal, y certifica la Secretaria del Tribunal Supremo.
(Fdo.) Camelia Montilla Alvarado Secretaria del Tribunal Supremo Interina

 El texto original dice lo siguiente:
“[W]e face the serious embarrassment of deciding a matter that would directly affect our own pocketbooks; and, in doing so, we may risk the public’s high opinion of the Court insofar as that opinion rests upon a belief that its judges are not self-interested. But the law requires judges to decide cases in which they have a self-interest where, as here, '“no provision is made for calling another in, or where no one else can take his place.” ’ Nor should judges, who are called upon to protect the least popular cause and the least popular person where the Constitution demands it, be moved by potential personal embarrassment. Whenever a court considers a matter where public sentiment is strong, it risks public alienation. But the American public has understood the need and the importance of judges deciding important constitutional issues without regard to considerations of popularity”. (Citas omitidas). Williams v. United States, 535 US 911, 919 (2002).

 Véanse, por ejemplo: In re Toro Goyco, 175 DPR 367 (2009); San Gerónimo Caribe v. ELA II, 174 DPR 766 (2008); San Gerónimo Caribe Project v. A.R.Pe., 174 DPR 640 (2008); San Gerónimo Caribe Project v. A.R.Pe., 173 DPR 241 (2008); In re López Montalvo, 173 DPR 193 (2008); Krans Bell v. Santarrosa, 172 DPR 731 (2007); In re Toro Goyco, 170 DPR 432 (2007); In re Ramos Mercado, 170 DPR 363 (2007); P.N.P. v. Calderón González, 170 DPR 268 (2007); Corp. P.R. Dif. Pub. v. U.G.T., 156 DPR 631 (2002); Virella v. Proc. Esp. Rel. Fam., 154 DPR 742 (2001); Nieves Cruz v. U.P.R., 151 DPR 150 (2000); Rebollo López v. Gil Bonar, 144 DPR 379 (1997); Ramírez de Ferrer v. Mari Brás, 142 DPR 941 (1997); Caquías v. Asoc. Res. Mansiones Río Piedras, 134 DPR 181 (Í993); Pueblo v. Echevarría Rodríguez II, 128 DPR 752 (1991); In re Arraiza Miranda, 120 DPR 368 (1988); In re García Marrero, 120 DPR 278 (1988); H.E. Vicente Cuesnongle, O.P. v. D.A.C.O., 119 DPR 457 (1987); Pradco Caribe, Inc. v. Tapia, 116 DPR 121 (1985); Campos del Toro v. Ame. Transit Corp., 113 DPR 337 (1982); Monclova v. Financial Credit Corp., 83 DPR 770 (1961).